MULFORD *v.* STENDER.

1. COURTS—JURISDICTION.
   The court which first obtains jurisdiction of a case has the exclusive right to decide the matter in issue.

2. SAME—SUIT PENDING IN FOREIGN JURISDICTION.
   Where a bill of interpleader was filed in the Wayne circuit court, in chancery, to determine, as between two defendants, the ownership of certain moneys in plaintiff's hands as executor of an estate, which had been assigned by one defendant to the other and later repudiated, the court had jurisdiction to finally dispose of the matter, and a motion to defer final adjudication until a final decree had been obtained in a suit subsequently started in a foreign jurisdiction between said defendants covering the same subject-matter, was properly denied.

3. EQUITY—FRAUD—RESCISSION—SHOWING—SUFFICIENCY.
   A showing by defendant S. that the assignment of his interest in the moneys in plaintiff's hands for stock of defendant corporation was procured by defendant corporation's secretary, who was a shrewd lawyer, by misrepresenting the value of its stock, which was practically worthless, *held*, sufficient to warrant relief by a court of equity.

4. ESTOPPEL—RATIFICATION—CONTRACTS — ASSIGNMENTS — RESCISSION.
   The action of defendant S. in accepting and paying for $1,100 worth of stock of defendant corporation, not here involved, was not such a ratification of his contract and assignment of $3,900 for additional stock as to estop him from repudiating said contract and assignment, where said corporation had not done or suffered anything in reliance thereon.

Appeal from Wayne; Hunt (Ormond F.), J. Submitted June 7, 1921. (Docket No. 25.) Decided October 3, 1921.

Bill of interpleader by Elmer W. Mulford, executor of the will of Hugo H. Stender, deceased, against William Stender and the Niles Invisible Door Check Company to determine the title to a legacy. From a decree for defendant company, defendant Stender appeals. Reversed, and decree entered for defendant Stender.

*William E. Henze*, for appellant.

*Henry C. L. Forler*, for appellee.

STONE, J.   On January 25, 1918, Elmer W. Mulford, as executor of the last will and testament of Hugo H. Stender, deceased, filed a bill of interpleader in the circuit court for the county of Wayne, in chancery, against William Stender and the Niles Invisible Door Check Company, a Michigan corporation, in which he alleged that there was in his hands, as such executor, the sum of $3,900 which originally was payable to said defendant William Stender as one of the legatees under said will, but which sum the defendant the Niles Invisible Door Check Company claimed by virtue of an alleged assignment from said defendant Stender; that defendant William Stender had repudiated the said alleged assignment, and that plaintiff was unable to ascertain who was entitled to said sum of money, and prayed that the parties defendant might make answer, and that the court might hear the matter and decide which of the defendants was entitled to said fund.   On March 2, 1918, the defendant Niles Invisible Door Check Company filed its answer, setting forth that it was entitled to the fund under an assignment from defendant William Stender, dated April 5, 1917, and praying that it might be so decreed by the court.

On March 28, 1918, defendant William Stender filed his answer, in which he set forth that on April 5,

1917, the defendant Niles Invisible Door Check Company by William Daniel Johnson, its secretary and treasurer, and the owner of the majority of the stock of said corporation, obtained from him a conditional subscription for 50 shares of the preferred stock of said company of the par value of $5,000, and that said Johnson, while acting as the attorney for said defendant Stender in the matter of the estate of Hugo H. Stender, deceased, had obtained the sum of $1,100 of the moneys coming to said defendant Stender, from said estate, and had applied the same on the purchase price of said $5,000 worth of stock, without the knowledge or consent of said defendant Stender. He further alleged that the said subscription was obtained from him, as was also the claimed assignment of the money due him from the estate aforesaid, by certain false and fraudulent representations, and that he had brought suit in the circuit court for Cook county, State of Illinois, against the Niles Invisible Door Check Company and said William Daniel Johnson, to recover the said sum of $1,100 taken by said Johnson as aforesaid, and to rescind the alleged subscription, and assignment by him to said Johnson of the said sum of $3,900. He asked that a decree of interpleader be entered, and prayed that the final adjudication of the matter be deferred in the Wayne circuit court, in chancery, until a final decree had been obtained in the case pending in Cook county, Illinois. The court below refused to continue or postpone the hearing of the case, and the same was heard upon pleadings and proofs, and on November 6, 1920, a final decree was entered in favor of the defendant Niles Invisible Door Check Company, and directing the plaintiff to pay said fund to that defendant, together with such interest as had accrued thereon. Costs were awarded to plaintiff to be paid out of said fund, and costs were awarded said company as against the

defendant William Stender, together with such costs as were taxed to the plaintiff. The defendant Stender has appealed.

Under the authority of *Maxim* v. *Shotwell*, 209 Mich. 79, the bill of interpleader was properly filed. It is urged by counsel for defendant Stender that the court below improperly heard and disposed of the case, and that its action should have been deferred until the Illinois court had tried the case there pending. But as it appears that the bill of interpleader was first filed, and as defendant Stender in his answer asked that a decree of interpleader be entered, we are of the opinion that the Wayne circuit court, in chancery, properly entertained jurisdiction, under the familiar rule that the court which first obtains jurisdiction has the exclusive right to decide the matter in issue. *Barnum Wire & Iron Works* v. *Speed*, 59 Mich. 272; *Allen* v. *Allen*, 188 Mich. 532, and cases there cited. We shall therefore proceed to consider the case upon its merits.

It is the claim of counsel for defendant Stender that he (Stender) is a person of weak mind, and is easily imposed upon by a designing and scheming person, and that he was made the dupe of the witness Johnson; and it must be conceded that the record gives some support to this claim. Defendant Stender testified to the effect that, prior to the execution of any papers, he went to Johnson's law office in Chicago, to retain him to look after his matters in Detroit, pertaining to the said estate, because he had become dissatisfied with the allowance of certain claims against the estate. Johnson does not deny that Stender consulted with him about the matter, or that he went to Detroit to examine into it, but says that he was not employed as attorney, but that his action was purely voluntary, and created no confidential relation. Stender claims that he went to Johnson's office several

times between March 27th and April 5, 1917; that he was directed there by a Mr. Koehling, whom he had known for some time, and that on March 28th he found Johnson in his office with two other men, and heard the telephone ring; that one of the men took the receiver, and then said "Mr. So and So would like to buy 200 or 250 Invisible door checks;" that he (Stender) left that day, without the parties coming to any arrangement, but returned on the next day, when he claims a similar conversation took place, about a man wanting to buy some of said stock. He claims that he then inquired of Johnson about the door checks, and the company, and was shown certain photographs, and then went with a Miss Jacobs and another person from Johnson's office to see some of the door checks in operation in the Marshall Field building, and some other store.

There is an irreconcilable conflict between the testimony of the defendant Stender and that of Johnson as to the representations made by Johnson. It does appear, however, that on or about April 5, 1917, and after Johnson had visited Detroit and learned about the estate, Stender signed and delivered to Johnson the following papers:

"Niles Invisible Door Check Co.,
   29 South La Salle street, Suite 916,
      Telephone Randolph 4480,
         Chicago, Ill.

"Subscription to 6% preferred Cumulative Stock of the Niles Invisible Door Check Co.

"The undersigned hereby subscribes to and purchases fifty shares of $100 each par value, of the 6% cumulative preferred stock of the Niles Invisible Door Check Company, a Michigan corporation, total amount $5,000, good after this subscription agreement has been countersigned by its authorized representative.

"Duly executed stock certificates shall be issued within five days from date of payment. All checks

must be made payable to the order of Niles Invisible Door Check Company. Said $5,000 to be paid as soon as money is collected from estate of Hugo H. Stender, and which $5,000 I hereby assign to said company.

"Dated April 5, 1917. WM. STENDER, Subscriber,
"Authorized representative,        Address 620 Wells St.,
    "A. C. JACOBS.                            Chicago, Ill.
"Accepted, W. D. JOHNSON, Secretary."

While Miss Jacobs testified that she had no connection with or interest in said company, it will be observed that she signed the above paper as "Authorized representative." The following instrument was also signed by defendant Stender, and delivered to Johnson, on the latter's letter head:

"WILLIAM DANIEL JOHNSON,
Attorney and Counselor at law,
908-910 National Life Building,
29 South La Salle Street,
Telephones Randolph 5672 and 5673,
Chicago.
                                    "April 5, 1917.
"Mr. WILLIAM E. HENZE,
    618 Moffat Building,
    Detroit, Michigan.
"Dear Sir:    To the bearer, Mr. William D. Johnson of Chicago, Illinois, I have assigned five thousand dollars ($5,000) of the amount due me of the estate of Hugo H. Stender, deceased, for which I have purchased securities from him of the same amount. You will please pay to him on account of said five thousand dollars ($5,000) the twelve hundred dollars ($1,200) now in your possession, less five per cent. (5%) due you as services for collecting same. I trust that you may find it convenient to make payment of said sum to him at this time.
                                    "WM. STENDER."

We are satisfied from the evidence that Johnson represented to Stender that the stock of the Niles Company was a valuable stock, that the company was a going concern, doing a good business and earning

dividends.    Stender testified that he visited the factory at Niles, Michigan.    He testified:

"I went to Niles between the 2d and 3d of May, and I found in Niles that the whole thing was rubbish —a junk shop.    The factory of the Invisible Door Check Co. was not going.    There were no men working there, there was no material there either.    There were three or four men, and one man sat around the stove.    I went back to Chicago and saw Johnson. I told him:  'I was in Niles yesterday, and looked at the factory, and you told me that the factory was so good, you got so much work to do you cannot fill orders, and all that kind of stuff.'    I say there was no material there.    Nobody was working there.    Then he says, 'I show you the factory and it will not cost you one cent.'  I said, 'I saw the factory one time, that is enough for me.'   *   *   *   After that I went to Johnson and said 'I want my money back,' and offered him the shares.    I said the factory is not in good standing, after I had been to the factory and saw there was nothing doing."

It should be here stated that Johnson had collected from the plaintiff $1,140, for which he gave Stender a certificate for 11 shares of said preferred stock and $40 in cash.    In July, 1917, Stender received a letter and a check from Johnson for $16.50 as a dividend; which check was never paid and Johnson claims that it was issued by mistake.    He testified on the subject as follows:

"The stenographer told me that Mr. Koehling had dictated that letter, and I said 'what in the world does  Koehling  mean?'    Well,  Mr.  Koehling  told me later that he had dictated a letter because he understood we were paying a dividend, and he wanted to keep Mr. Stender satisfied, and put it on my desk, and I not looking it over to see whether it was proper or not, said, 'Don't you know that you could not send a dividend check to one man and overlook the rest?'"

It is conceded that no dividend was ever paid.    In the meantime Stender had attempted to repudiate his

subscription, and on December 12, 1917, he sent the company and Johnson a notice as follows:

"You are hereby notified that I have heretofore canceled by personal notice to Mr. William D. Johnson, secretary of your company, and I do hereby cancel any and all subscriptions for the stock of your company, which you may, have or hold, or which you may pretend to have or hold, made, or alleged to have been made by the undersigned.

(Signed) "WM. STENDER."

Much of the testimony of the witnesses for the company is inconsistent, and at variance with documentary evidence contained in the record. As tending to show the general slackness pertaining to the affairs of the company, it appears that the annual reports of the company were not made at the time required by the statute. When made they showed the value of the real estate used in the business to be $20,000. It turns out that the factory had been levied upon and sold upon execution before Stender's subscription was made. Of this he was entirely ignorant. Johnson does not claim that he told Stender of this material fact. There was also a $3,000 judgment standing against the company. The sheriff's deed of the factory property bears date June 10, 1918, and it recites that it was sold on execution January 8, 1917, and not redeemed. It was deeded to Wilbur N. Burns, by the usual form of sheriff's deed on execution sale. On June 19, 1919, the premises were conveyed by Burns and wife to "Fred N. Bonine and Viva T. Bonine, husband and wife jointly," by quitclaim deed. Fred N. Bonine had on May 5, 1919, made a declaration of trust, stating that he was holding the property in trust for said company. This was prior to the deed from Burns to him. Not being signed by his wife with whom he held the property by the entireties, the declaration was of no avail. The

title of the property stands upon this record in the names of Bonine and wife. In our opinion the equities of the case are with defendant Stender. It appears clear to us that these parties defendant were not dealing at arms' length, whether Johnson was the attorney of Stender or not. Johnson, representing the company, was a shrewd lawyer, and had superior knowledge of the condition of the company and its property, which he did not disclose, but did misrepresent in the dealing with Stender. The consideration for this assignment was so grossly inadequate as to shock the conscience of a chancellor, and a court of equity should grant relief. The court below was of the opinion that defendant Stender, by his conduct, ratified the subscription and assignment contract, and that he is now estopped from repudiating the same. The $1,100 transaction is not here involved. The company has not done or suffered anything in reliance upon the subscription that should bar the defendant Stender from defending against the claim of $3,900 yet unpaid. The decree below is reversed. A decree will be entered here directing the plaintiff herein to pay to the defendant Stender the sum of $3,900, together with such interest as has accrued. The plaintiff will be allowed his costs to be taxed, to be paid out of the said fund, and defendant Stender will recover his costs to be taxed, against the defendant the Niles Invisible Door Check Company.

STEERE, C. J., and MOORE, WIEST, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.