## R. PAUL SHAROOD AND OTHERS v. ROLLAND F. HATFIELD AND OTHERS.

210 N. W. 2d 275.

June 26, 1973—No. 44439.

*Richard E. Kyle, Leonard J. Keyes,* and *Briggs & Morgan,* for petitioners.

*Warren Spannaus,* Attorney General, *Jonathan H. Morgan,* Solicitor General, *Peter W. Sipkins,* Assistant Solicitor General, and *Kenneth E. Raschke, Jr.,* Special Assistant Attorney General, for respondents.

KNUTSON, CHIEF JUSTICE.

This is an original proceeding commenced in this court challenging the constitutionality of portions of L. 1973, c. 638, in so far as they affect the right of this court to regulate the practice of law. Petitioners are R. Paul Sharood, an attorney at law duly licensed to practice in the State of Minnesota and a member of the Minnesota State Bar Association; Robert M. Frisbee, an attorney at law duly licensed to practice law in the State of Minnesota who is not a member of the Minnesota State Bar Association; and the Minnesota State Bar Association, an unincorporated voluntary association. The petitioners bring this proceeding for themselves and all attorneys at law of the State of Minnesota. Respondents are Rolland F. Hatfield, state auditor; Val Bjornson, state treasurer; and Richard L. Brubacher, commissioner of administration of the state.

We issued our order on June 8, 1973, to show cause, returnable on June 19, 1973, why the relief prayed for in the petition, that we judicially declare unconstitutional and void the provisions of L. 1973, c. 638, that are in conflict with the right and duty of this court to regulate the practice of law, should not be granted.

At the 1973 session of the Minnesota legislature, c. 638 was adopted and became law on May 24, 1973. It is a comprehensive

act seeking to regulate the examination of all professional groups in the state, including those regulating the practice of law.

In order to fully understand the impact of this act upon the court's right to control and regulate the practice of law, it is necessary to take judicial notice of our own past orders and records. Prior to 1960, the court, in order to finance the admission of attorneys to the practice of law and disciplinary proceedings, received its funds in part from legislative appropriations that came from tax sources. On October 5, 1961, this court, deeming it inappropriate to police our profession by tax money, promulgated a rule under which all attorneys were required to pay an annual registration fee of $7, which money was to be used for the purpose of regulating the practice of law. The preamble to this order read:

"WHEREAS, Minnesota does not have an integrated bar but does have an active and effective voluntary bar association in which a large percentage of all active attorneys at law practicing in this state are members, and

"WHEREAS, In the past the expenses of conducting examinations for admissions to the practice of law and the expenses incident to conducting disciplinary proceedings have been paid in part by a biennial appropriation of the legislature out of the general tax sources of the state; in part by a fee exacted from applicants for admission to the bar; and in part by contributions received from the state bar association, and

"WHEREAS, It is improper to continue accepting money for these purposes either from the general tax sources of the state or from contributions of a voluntary bar association that does not include as members all practicing attorneys of the state as these obligations ought of right to be borne by all members of the bar, whether associated with the state bar association or not, and

"WHEREAS, There is now no current list of those who are authorized to practice law in this state;

"NOW THEREFORE, By virtue of and under the inherent power

of this court to regulate the practice of law in this state, these rules are adopted in order that there may be on file annually a current list of all those authorized to practice law in this state and in order that the expenses of conducting examinations for admissions to the bar and conducting disciplinary proceedings may be borne by all attorneys at law authorized to practice law in this state."

Originally, the money collected from the registration fee paid by attorneys was deposited in a private bank for the reason that there was no appropriation of it for the use of the court which would have enabled the court to pay the expenses for which it was intended if it were deposited with the state treasurer. By L. 1963, c. 718, Minn. St. 481.01 was amended so as to permit the money so collected to be deposited with the state treasurer under a continuing appropriation. The italicized language was added to § 481.01 as it had formerly existed:

"* * * *Such* fees, *and any other fees which may be* received *pursuant to such rules as the supreme court may promulgate governing the practice of law,* shall ·be paid to the state treasurer and shall constitute a special fund *in the state treasury. The moneys in such fund are* appropriated *annually to the supreme court* for the payment of compensation *and expenses* of the members of the· board of law examiners *and for otherwise regulating the practice of law. The moneys in such fund shall never cancel.* Payments therefrom shall be made by the state treasurer, upon warrants of the state auditor issued upon vouchers signed by one of the justices of the supreme court."

The money collected as registration fees from attorneys has since been deposited with the state treasurer under the above assurance that it would be kept in a special fund and would never cancel.

Ultimately it was determined that $7 per year was insufficient to adequately supervise and regulate the practice of law, so at the request of many leaders of the bar and the Minnesota Bar

Association, in 1970 a State Board of Professional Responsibility was established by order of this court with a full-time director and such assistants as he required in order that a more adequate supervision over attorneys could be had. The same year, the registration fee of attorneys had been increased from $7 to $25 per annum, with certain exceptions not here material. All amounts in excess of $7, under the order of this court were to be "allocated and used exclusively for regulating the practice of law according to the rules of professional conduct adopted or promulgated by the supreme court."

Under portions of c. 638 the action taken by the supreme court to raise funds from registration of attorneys to regulate the practice of law is now threatened by diverting money contributed by members of the legal profession from the special fund to the general revenue fund of the state without an appropriation of a like amount to the supreme court for the purpose for which the money was raised. This money is not tax money. It is held in trust by the supreme court for the purposes for which it has been contributed by attorneys.

By virtue of registration of all attorneys, for the first time we now know who are attorneys authorized to practice law. In In re Petition for Integration of Bar of Minnesota, 216 Minn. 195, 197, 12 N. W. 2d 515, 517 (1943), we pointed out that the "exact number of attorneys in the state is uncertain." It remained so until the annual registration of lawyers became effective. By the latest available figures, there are 6,718 attorneys registered under our rule. Of this, 1,834 pay only a $7 registration fee as retired lawyers and judges, out-of-state lawyers, and newly admitted lawyers (not more than 3 years' practice). There are 4,884 attorneys paying the $25 fee. While, as we have stated above, the Minnesota State Bar Association is a voluntary association, it has at the present time 5,085 members, so it is apparent that a very high percentage of the active attorneys belong to the association.

1. Respondents contend that this proceeding is prematurely

brought because there has as yet been no overt act to interfere with the power of the court to regulate the practice of law. In other words, they claim there is at this time no justiciable issue that gives the court authority to declare what may or may not be done in the future.

To pass on this contention it is necessary to examine the impact of c. 638 on the court's inherent power to regulate the practice of law:

§ 59 of said chapter purports to delete the provision of Minn. St. 481.01 providing that the moneys paid into a special fund of the state treasury from registration fees and other fees collected pursuant to court order shall remain inviolate, and provides that such fees shall be credited to the general revenue fund with any unexpended balance in such special fund.

§ 59 also provides that expenses of administering the provisions of §§ 481.01 to 481.07 shall be paid from legislative appropriations made to the State Board of Law Examiners upon vouchers signed by a member of this court. No such appropriation has yet been made.

§ 60 of said c. 638 contains provisions in conflict with those of the present rules on professional responsibility. It purports to change provisions of the present rules concerning the number of members on the State Board of Professional Responsibility, the compensation of members, the terms of office of the members, and their method of selection. It also purports to transfer funds collected by the clerk of this court from attorneys to the general fund in the state treasury together with any unexpended balance of special funds pertaining thereto.

§ 62 of said chapter purports to require the use of certain standardized tests by the State Board of Law Examiners which is in conflict with the rules of the supreme court promulgated for admission to the bar of this state.

Subd. 3 of § 63 of said chapter purports to include the State Board of Law Examiners and the Board of Professional Responsibility within the definition of "[n]on-health related li-

censing board" and under § 64 of said chapter administrative control is purportedly placed in respondent commissioner of administration, including the transfer of funds of said boards.

§ 67 purports to give respondent commissioner of administration authority over the amount of the lawyers' annual registration fee.

From the above we are convinced there is a justiciable issue as to whether the provisions of c. 638 discussed above will effectively curtail the power of this court to regulate the practice of law. We need not wait until we are impotent to discharge our judicial duties before we assert our inherent power to preserve what is clearly a judicial function.

In the case of In re Courtroom and Offices of Circuit Court, 148 Wis. 109, 134 N. W. 490 (1912), the Wisconsin Supreme Court held that a county circuit court could, by ex parte order, forbid the board of supervisors of the county from interfering with the operations of the court. See, also, Robbin v. Carlton, 211 So. 2d 562 (Fla. 1968).

For a collection of authorities on the inherent powers of the court in many fields, see "Inherent Powers of the Court" (1973), published and distributed by the National College of the State Judiciary.

2. Much of the law relating to the court's inherent power to regulate the practice of law is contained in our opinion in In re Petition for Integration of Bar of Minnesota, 216 Minn. 195, 12 N. W. 2d 515 (1943), and it seems needless to repeat what we said in that opinion. Many of the cases involving this subject are reviewed there. We need quote only the following (216 Minn. 199, 12 N. W. 2d 518):

"The fundamental functions of the court are the administration of justice and the protection of the rights guaranteed by the constitution. To effectively perform such functions, as well as its other ordinary duties, it is essential that the court have the assistance and cooperation of an able, vigorous, and honorable

bar. It follows that the court has not only the power, but the responsibility as well, to make any reasonable orders, rules, or regulations which will aid in bringing this about, and that the making of regulations and rules governing the legal profession falls squarely within the judicial power thus exclusively reserved to the court."

The separation of powers under our constitution into three distinct departments, legislative, executive, and judicial, was articulated in the early case of In re Matter of Application of the Senate, 10 Minn. 56, 57 (78, 80) (1865), as follows:

"* * * By the constitution, the power of the state government is divided into three distinct departments, legislative, executive, and judicial. The powers and duties of each department are distinctly defined. The departments are independent of each other to the extent, at least, that neither can exercise any of the powers of the others not expressly provided for. Const., art. 3, § 1. This not only prevents an assumption by either department of power not properly belonging to it, but also prohibits the imposition, by one, of any duty upon either of the others not within the scope of its jurisdiction; and 'it is the duty of each to abstain from and to oppose encroachments on either.' Any departure from these important principles must be attended with evil."

With due respect to coequal branches of our government, the courts should and do exercise great restraint before striking down a legislative act as unconstitutional, particularly when it involves a determination of what is a legislative prerogative and what is a judicial function. But at the same time the court must determine what is judicial and what is legislative; and if it is a judicial function that the legislative act purports to exercise, we must not hesitate to preserve what is essentially a judicial function.

Chapter 638 covers other regulatory boards as well as those affecting the practice of law. As to such boards, the constitutional issue involved in the matter now before us is absent. Regu-

latory boards aside from those regulating the practice of law are created by the legislature. What the legislature may create, it may control. The powers to regulate the practice of law are derived not from the legislature but from the people through the constitutional separation of the powers of government. It is true that this court has acquiesced in legislative acts prescribing administrative procedures for admission and discipline of attorneys as long as such acts did not usurp the right of the court to make the final decision. But when the legislature attempts to go beyond merely indicating what it deems to be desirable, we have not hesitated to strike down such acts as unconstitutional. Thus, in Fitchette v. Taylor, 191 Minn. 582, 254 N. W. 910 (1934), we upheld our right to prohibit by injunction those not members of the bar from engaging in the unauthorized practice of law. In In re Disbarment of Tracy, 197 Minn. 35, 266 N. W. 88, 267 N. W. 142 (1936), we rejected as unconstitutional statutes attempting to limit the power of this court in disbarment proceedings. And in Cowern v. Nelson, 207 Minn. 642, 290 N. W. 795 (1940), we rejected as unconstitutional statutes attempting to regulate the practice of law. In State ex rel. Ryan v. Cahill, 253 Minn. 131, 91 N. W. 2d 144 (1958), while we denied a petition for a writ of prohibition to prevent the unauthorized practice of law, we indicated that the petitioners, who acted for themselves and the Committee on the Unlawful Practice of Law of the Montana Bar Association, could, if they so desired, proceed by way of declaratory judgment in this court to have an adjudication as to whether the Brotherhood of Railroad Trainmen were engaged in the unauthorized practice of law. We also held that the parties involved had a sufficient interest in the outcome of such an action to maintain it.

We have no doubt but what some of the provisions of c. 638 as they apply to the judiciary were well motivated, and upon adequate consideration it is entirely possible that the court may wish to adopt some of the provisions by rule of the court. However,

in so doing, we do not concede that their enactment was a permissible legislative prerogative.

3. To permit L. 1973, c. 638, so far as it affects the practice of law, to stand, would result in usurpation by the legislative branch of government of the judicial function of regulating the practice of law. While this court desires to work in harmony with the legislative and executive branches of government, we cannot and should not abdicate our judicial responsibility by failing to assert our inherent right to perform a function which is clearly judicial, however unpleasant it may be to assert that right.

The power to regulate the practice of law rests with the judiciary. Over 100 years ago, the United States Supreme Court, in a case arising from the Territory of Minnesota, said:

"* * * [I]t has been well settled, by the rules and practice of common-law courts, that it rests exclusively with the court to determine who is qualified to become one of its officers, as an attorney and counsellor, and for what cause he ought to be removed." Ex Parte Secombe, 60 U. S. (19 How.) 9, 13, 15 L. ed. 565 (1857).

This court has recognized its inherent power to regulate the practice of law in many decisions. In the syllabus written by the court to the case of In re Petition for Integration of Bar of Minnesota, 216 Minn. 195, 12 N. W. 2d 515, 516, we said:

"* * * [T]he power to make the necessary rules and regulations governing the bar was intended to be vested exclusively in the supreme court, free from the dangers of encroachment either by the legislative or executive branches * * *."

In In re Disbarment of Greathouse, 189 Minn. 51, 54, 248 N. W. 735, 737 (1933), we said:

"The power to admit applicants to practice law is judicial and not legislative, and is of course vested in the courts only. Originally the courts alone determined the qualification of candidates for admission; but, to avoid friction between the departments of government, the courts of this and other states have gener-

ously acquiesced in all reasonable provisions relating to qualifications enacted by the legislatures."

More recently, in In re Daly, 291 Minn. 488, 490, 189 N. W. 2d 176, 179 (1971), we said:

"* * * The ultimate determination governing admission, supervision, and discipline of attorneys in this state * * * is vested in this court."

The same result has been reached elsewhere. See, State v. Cannon, 196 Wis. 534, 539, 221 N. W. 603, 605 (1928), where the Wisconsin court said:

"* * * Under our form of government, where the judicial constitutes an independent branch, the character of those who stand in this relation to the court should be of the court's choosing and under the supervision of the court, and other branches of the government should not be permitted to embarrass or frustrate judicial functions by the intrusion of incompetent or improper officers upon the courts. Courts will defer to reasonable legislative regulation, but this deference is one of comity or courtesy rather than an acknowledgment of power. This view is without doubt supported by the great weight of authority."

See, also, Denver Bar Assn. v. Public Utilities Comm. 154 Colo. 273, 391 P. 2d 467, 13 A. L. R. 3d 799 (1964).

The courts in places where the bar has been integrated by rule of court recognize the authority of the judicial branch to provide by rule for the raising of funds from the members of the legal profession and the expenditure of such funds for regulating the profession without legislative authorization or participation. See, In re Unification of New Hampshire Bar, 109 N. H. 260, 248 A. 2d 709 (1968). Similarly, where the bar is not integrated, the courts have recognized the power to provide by rule that fees paid for admission to the bar be handled by the court in one manner or another. In Laughlin v. Clephane, 77 F. Supp. 103, 106 (D.D.C. 1947), the court said:

"* * * The court, in the exercise of an authorized as well as an inherent power, rightfully accumulated a fund in order that it might make effective the rules that it had promulgated. This fund did not belong to the United States but belonged to the court and was to be administered in a manner outlined by the court."

The case of In re Member of Bar, 257 A. 2d 382 (Del. 1969), contains a good discussion of the inherent powers of the court to establish and control the bar. In holding that the court had authority to provide by rule a clients' security trust fund which was to be administered by trustees appointed by the court, the court said, among other things (257 A. 2d 385):

"Finally, respondent argues that the assessment laid upon Delaware lawyers is unconstitutional because it is the levying of a tax which is a legislative and not a judicial function. The short answer to this contention is that the payment required is an assessment and not a tax. We have held that we have the power to order the creation of the Fund and, that being so, it necessarily follows that we have the power to direct the imposition of a reasonable assessment to accomplish the purpose.

* * * * *

"To sum up, we hold that the promulgation of Rule 32A is a valid exercise of our inherent power to maintain the standards required of the Bar, and to uphold its reputation by the imposition of collective responsibility for the conduct of its members. Accordingly, the refusal by a member of the Bar to pay the assessment required of him is professional delinquency on his part."

Application of the above principles to the case before us can lead only to the conclusion that, if we were to permit L. 1973, c. 638, to stand, it would effectively interfere with the right of this court to control the admission of attorneys to practice and their removal and discipline. If the funds that belong to the attorneys of this state were transferred to the general revenue fund, with no appropriation, there would be no money to operate either the Board of Law Examiners or the Board of Professional Responsi-

bility. An examination for admission to the bar is scheduled for July of this year, and if the Board of Law Examiners were left without money to pay the expenses of such examination, it would be impossible to conduct it. Similarly, without any money, the Board of Professional Responsibility would have to discontinue its work.

Section 68 of c. 638, which provides the effective date of the act, is quite ambiguous. It reads:

"The provisions of this act except section 60 [1] shall be effective July 1, 1973. Section 60 shall be effective January 1, 1974. All provisions relative to depositing fees and other income in the general revenue fund shall be effective July 1, 1976." [2]

---

[1] L. 1973, c. 638, § 60: "Any board of professional responsibility established by rule of the Minnesota supreme court whose function is recommending the discipline of attorneys at law shall be composed of nine members learned in the law and six public members as defined for purposes of this act. Members shall be appointed by the court for four year terms; provided that of the public members first appointed, two shall serve a one year term, two shall serve a two year term, and two shall serve a three year term. Any funds now collected by the clerk of the Minnesota supreme court from attorneys at law as a registration fee and used to defray the costs of the board of law examiners and the board of professional responsibility shall be paid by the clerk of the Minnesota supreme court into the general fund in the state treasury together with the unexpended balance of any special fund pertaining thereto. The cost of administering the laws and rules of court applicable to the licensing and discipline of attorneys at law shall be paid for by general appropriation made to the supreme court. The members of the board of professional responsibility shall receive a per diem payment of $35 for activity directly connected with board activity as well as their actual and necessary expenses in the same manner and amount as state employees."

[2] On June 14, 1973, subsequent to the commencement of this proceeding, the attorney general rendered an opinion in which he stated that under the provision of § 68 the transfer of funds could not be made until July 1, 1976. The opinion does not deal with other provisions of c. 638 that affect the right of the court to control the practice of law, at least some of which provisions would be effective on January 1, 1974.

Chapter 638 was passed shortly before the recent legislative adjournment. As stated above, c. 638 is a comprehensive act governing practically all professional examination and licensing boards presently existing in the state of Minnesota. As to many of these, the constitutional issues involved in the case before us do not exist and we do not pass on the validity of the provisions of the act not affecting the regulation of the practice of law. It seems reasonable to believe that inclusion of certain provisions in c. 638 constituting an intrusion into the judicial function of the court to regulate the practice of law was probably inadvertent. However, they became part of the chapter. We feel compelled to hold that inclusion of the provisions regulating the practice of law is an impermissible constitutional invasion by the legislative branch into functions that are judicial.

The provisions of L. 1973, c. 638, in so far as they apply to the judicial branch of government, are hereby declared to be an unconstitutional assumption of judicial power by the legislature.

IT IS ORDERED that the state auditor and the state treasurer be permanently enjoined from transferring funds deposited with the treasurer under and pursuant to Minn. St. 1971, § 481.01, to the general revenue fund of the state and that the state auditor and state treasurer continue to deposit such funds under and pursuant to order of the supreme court pursuant to Minn. St. 1971, § 481.01, for the purpose for which such funds were collected.