STATE of Minnesota, by Hubert H. HUMPHREY, III, its Attorney General, Petitioner, Appellant,

v.

JIM LUPIENT OLDSMOBILE COMPANY, formerly Lupient Oldsmobile Company, et al., Respondents.

STATE of Minnesota, by Hubert H. HUMPHREY, III, its Attorney General, Lower Court Petitioner,

v.

Douglas J. KRUEGER, et al., Lower Court Respondents.

No. C4–92–1190.

Supreme Court of Minnesota.

Dec. 17, 1993.

Hubert H. Humphrey, III, Atty. Gen., Louis K. Robards, Asst. Atty. Gen., St. Paul, for appellant.

David D. Meyer, William S. Rosen, St. Paul, for respondents.

KEITH, Chief Justice.

In this case, we are asked to clarify the standards to be used by a trial court in determining what interest rate provides just compensation to landowners in condemnation proceedings. We reverse and remand.

The state commenced this action to acquire by eminent domain certain property owned by Respondent James W. Lupient as part of a project to upgrade Highway 12 in Golden Valley, Minnesota. On October 17, 1988, the state acquired title and right of possession to this property and deposited its appraised amount of damages in the sum of $73,960 with the Hennepin County District Court Administrator. On February 6, 1992, three court-appointed commissioners, after hearings in August of 1991, awarded damages of $172,384 for this taking. Neither party appealed the commissioners' award. Both parties anticipated that the state would owe yearly interest as part of just compensation on the difference between the amount paid by the state since the taking and the commissioners' award.

On April 6, 1992, the state deposited its final payment with the trial court which amount included simple interest computed at the rate set by Minn.Stat. § 117.195 and § 549.09 (1992). The interest rates paid by the state averaged seven percent per year.[1] Lupient then filed a motion requesting that the district court order the state to pay interest at the rate of 13.2 percent per year. This rate was based on the amount earned during this period by a pension and profit sharing trust for employees of various Lupient companies known as the Harold Chevrolet Pension Trust. This trust was managed by Investment Advisors, Inc. of Minneapolis and earned an average yearly return of 13.2.[2] Lupient also argued that the prime interest rates during this period were ten percent and he was required to pay one percent over prime to obtain operating revenues for his businesses and, this too, indicated that a higher interest rate than seven percent was required.

The state opposed Lupient's motion, asserting that the yearly rates based on the secondary market yield of one-year Treasury Bills provided by Minn.Stat. §§ 117.195 and 549.09 afforded just compensation and reflected a reasonable return on prudent investments with a guaranteed protection of principal. The state further argued that Lupient had not met his burden of proving that 13.2 percent per year interest represented a no-risk rate of return consistent with reasonable and prudent investments. On May 1, 1992, after submission of affidavit and depositions, the trial court held a hearing in chambers on this issue and on May 13, 1992,

---

1. The yearly interest rates set by Minn.Stat. §§ 117.195 and 549.09 are based on the secondary market yield of one-year United States Treasury Bills. The rates for the time period relevant to this case were eight percent for 1988 and 1989, seven percent for 1990 and 1991 and five percent for 1992.

2. The Harold Chevrolet Pension Trust earned rates of 10.4 percent in 1987 and 1988, 23.4 percent in 1989, 0.6 percent in 1990, and 23.0 percent in 1991.

filed an order directing the state to pay interest at the rate of 13.2 percent per year. The trial court did not issue findings of fact, conclusions or a memorandum of law.

The court of appeals affirmed the district court's award of 13.2 percent per year interest noting:

> The proper inquiry is: what return would have been available to the landowner had he been paid in money the value of the property at the time of the taking and had made reasonable and prudent investments? Had Lupient been paid at the time the State took possession, he could have put his money at reasonable and prudent risk. There is no reason to limit him to a "risk-free" return because the operational assumption is that he *has* received his principal and could have put it to work.

*State by Humphrey v. Jim Lupient Oldsmobile Co.*, 1993 WL 44202 at *5 (Minn.App. 1993) (citations omitted).

We granted review to clarify the standard by which a trial court should determine the interest rate in condemnation cases.

This court first dealt with this issue in 1981, in the case of *State by Spannaus v. Carney*, 309 N.W.2d 775 (Minn.1981). In that appeal, the appellants contended that the statutory interest rate of six percent provided by Minn.Stat. § 334.01, subd. 1 (1980) did not satisfy the requirements of just compensation guaranteed by Minn. Const. art. 1, § 13. *Id.* at 776. The court found that the determination of the rate of interest on condemnation awards is a judicial decision. *Id.* The court remanded the case to the trial court to resolve the issue of whether interest of six percent satisfied the requirements of just compensation. *Id.* The court stated that the trial court must determine the rate of interest required to give the landowner "the market value of the property at the time of taking contemporaneously paid in money." *Id.* The court went on to hold that the landowner is entitled to that return which would have been available if the landowner had been timely paid and had made reasonable and prudent investments. *Id.* The rate of return which satisfies the requirement of just compensation, the court held, may be more, less, or equal to the

return allowed by statute. *Id.* Courts in other jurisdictions have similarly held that they are not bound by a statute setting an interest rate in condemnation cases and have remanded for a determination of whether the statutory rate provides just compensation. *See United States v. 50.50 Acres of Land,* 931 F.2d 1349, 1355 (9th Cir.1991) (holding trial court erred in failing to find a flexible statutory rate based on rates of one-year Treasury Bill was "unreasonable" before entering judgment for interest at a rate other than that set by statute).

In 1984, the Minnesota legislature set forth the present procedure used to determine interest rates in condemnation actions. These statutes set a flexible interest rate based on the secondary market yield of one-year United States Treasury Bills. Minn.Stat. §§ 117.195 and 549.09 (1992). The question then becomes, what weight, if any, should the trial court give to the statutory rate.

We have occasionally permitted a statute to stand as a matter of comity, even where the legislature has encroached somewhat upon a judicial function, so long as the statute does not conflict with this court's inherent authority to make the final decision. *See Sharood v. Hatfield,* 296 Minn. 416, 424–25, 210 N.W.2d 275, 278–80 (1973) (noting that the court has "acquiesced in legislative acts prescribing administrative procedures for admission and discipline of attorneys as long as such acts do not usurp the right of the Court to make the final decision.") *See also* Maynard E. Pirsig and Randall M. Tietjen, *Court Procedure and the Separation of Powers in Minnesota,* 15 WM. MITCHELL L.REV. 141, 182 (1989). In this case, because we have not set out guidelines by which trial courts may determine interest rates in condemnation actions, we believe that, as a matter of comity, the statutory interest rate should be weighed by the trial court as evidence of an appropriate rate.

■ We believe that a reasonable rate is what a reasonable and prudent investor would earn while investing so as to maximize the rate of return over the relevant period of time, yet guarantee safety of principal. This definition is consistent with definitions articu-

**364**

lated in other jurisdictions. *See United States v. 50.50 Acres of Land,* 931 F.2d 1349, 1355 (9th Cir.1991); *United States v. 429.59 Acres of Land,* 612 F.2d 459, 465 (9th Cir. 1980); *Redevelopment Agency v. Gilmore,* 38 Cal.3d 790, 214 Cal.Rptr. 904, 912–913, 700 P.2d 794, 804 (1985).

■ The requirement that a reasonable rate on investments be one which guarantees safety of principal means that the types of investment to which a trial court should look as evidence of a reasonable rate must be those which have a very low risk.[3] In this case, the evidence before the trial court failed to show that the 13.2 percent rate was based on investments which guarantee safety of principal. Lupient stated in his deposition that he believed that Investment Advisors, Inc. had invested the pension plan in stocks which do not guarantee a return of principal. Lupient did not release information to show the percentage of the pension plan that was invested in stocks but the state's expert's affidavit showed that the state had a similar rate of return on a plan in which 60 percent of the funds were invested in stocks. Further, Lupient's evidence showed that the rate of return on the pension plan had varied widely from year-to-year, from 23.4 percent in 1989, to 0.6 percent in 1990, and then back up to 23 percent in 1991. These fluctuations do not appear to be consistent with a low-risk investment.

■ On remand, and in future condemnation actions, the trial court should presume that the statutory rate is reasonable and, therefore, meets the requirements of just compensation and should order judgment at that rate unless the condemnee rebuts this presumption and affirmatively shows that another rate is reasonable and affords just compensation. In determining a reasonable rate, the trial court should look to rates on investments which guarantee safety of principal.

3. For example, the following would qualify as very low risk investments to which a trial court might look for evidence of a reasonable rate: certificates of deposit from federally insured banks, United States Treasury Bills with maturities within the relevant time period, other gov-

■ The state also urges that the trial court should have held a full trial-type evidentiary hearing to determine the appropriate interest rate. The statutory scheme does not require a full evidentiary hearing to determine just compensation in each condemnation action. *See* Minn.Stat. § 117.085 (1992). This scheme requires only notice and an opportunity to be heard. A full adjudicative hearing on this issue is not necessary. We believe that the standards set out in this opinion will more narrowly focus the trial court's inquiry and the trial court may set the interest rate based on affidavits and depositions.

The decision of the court of appeals is reversed and the case remanded for further proceedings consistent with this opinion.

SIMONETT, Justice (concurring specially).

I join in the court's opinion but wish to comment on what is a "judicial question."

It is said that determining the measure of compensation in condemnation proceedings is a "judicial and not a legislative question" because the government may not constitute itself the judge in its own case. *Monongahela Navigation Co. v. United States,* 148 U.S. 312, 327, 13 S.Ct. 622, 626, 37 L.Ed. 463 (1892). Thus the government as a taker should not be setting the rate of interest for what it is taking; or at least the legislative branch, which pays the award, should not be setting the interest. This determination, so the reasoning goes, is better made by the judicial branch which is structured to be a neutral arbiter. Nevertheless, the question of interest relates not to the amount of the award itself but to preserving the value of the award. While an award reflects the many unique characteristics of the particular parcel taken, an interest rate is less unique or particularized, more easily identified, and allows for some relaxation of the "judicial question" test. Thus courts have allowed a

ernment bonds, and long term corporate bonds from AAA rated companies with maturities within the relevant time period. This list is not intended to be exclusive and trial courts may look to other investments so long as they are very low risk.

statutory interest rate to be "evidence" of what is just compensation.

In *Monongahela*, Congress authorized the condemnation of the property owner's lock and dam but added a proviso that in determining the amount of the award, the property owner's franchise to collect tolls was not to be considered. It was in the context of rejecting this proviso that the Court said the right to compensation was a judicial, not a legislative, question. In *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 306, 43 S.Ct. 354, 356, 67 L.Ed. 664 (1923), the United States Supreme Court held that a property owner was entitled to interest on its condemnation award as part of "just compensation"; but there Congress had made no provision for any interest, so the Court approved use of South Carolina's legal rate.

The majority opinion in this case is consistent with *State by Spannaus v. Carney*, 309 N.W.2d 775, 776 (Minn.1981). Here the interest rate, although prescribed by statute, is tied to a rate outside the control of the state legislature, is updated every year, and is the rate paid on other money judgments. In enacting this statutory rate it is presumed the legislature did not intend to violate the constitutional requirements for just compensation. Hence, Minn.Stat. §§ 117.195 and 549.09 are construed in tandem to set a rate that is presumptively just compensation. This presumption is rebuttable, thus affording the property owner its judicial forum. The proper interest rate in a particular case is a mixed question of law and fact with significant constitutional implications, and the question, therefore, is for the court to decide.