**In re Petition of Elliot ROTHENBERG for Review of a Decision of the Board of Continuing Legal Education.**

No. A03–884.

Supreme Court of Minnesota.

March 25, 2004.

Elliot C. Rothenberg, Pro se, Minneapolis.

Michael A. Hatch, State Attorney General, Steven M. Gunn, Assistant Attorney General, Ruth E. Flynn, Assistant Attorney General, St. Paul, for Respondent.

Peter A. Swanson, Golden Valley, for Amicus Curiae.

Jennifer E. Giesen, Kathleen Hagen, Minneapolis, for Amicus Curiae MN Disability Law Center.

## O P I N I O N

ANDERSON, PAUL H., J.

Petitioner Elliot Rothenberg is a lawyer currently licensed to practice law in the State of Minnesota. During his most recent three-year reporting period for continuing legal education credits, Rothenberg chose not to comply with Rule 9(A)(2) of the Rules of the Minnesota Board of Continuing Legal Education (RMBCLE). Rule 9(A)(2) requires lawyers to submit an affidavit showing that they have completed

at least two hours of courses on the elimination of bias in the legal profession and in the practice of law. At a hearing before the Board of Continuing Legal Education, Rothenberg asserted that the elimination of bias requirement is unconstitutional. The Board found that Rothenberg was in noncompliance with the elimination of bias requirement and recommended that his license be placed on restricted status. We conclude that the elimination of bias requirement and the Board's approval of continuing legal education courses to satisfy the requirement do not violate Rothenberg's constitutional rights and order Rothenberg to comply with Rule 9(A)(2), RMBCLE, by July 1, 2004, or have his license placed on involuntary restricted status.

■ On September 15, 1995, this court established by order an elimination of bias requirement as part of the continuing legal education program in Minnesota.[1] At the same time, we authorized the Board of Continuing Legal Education to create a Special Continuing Legal Education Advisory Committee to study definitions, course approval standards, and recommend rules for the requirement.[2] On January 30, 1996, the Advisory Committee submitted an Interim Report, which noted concerns and recommendations from members of the bar regarding the elimination of bias requirement. Many bar members recommended that the rules should not only permit the approval of courses addressing issues identified in the Minnesota Supreme Court Task Force Report on Race Bias, but also permit courses addressing other viewpoints on the extent of bias in the legal profession. Members cautioned against drafting rules that would "require attorneys to attend courses contrary to the attorneys' political or religious beliefs," and recommended the court adopt a "broad definition of bias, permitting the approval of any course designed to help attorneys become aware of bias in society in general." In its Final Report, the Advisory Committee recommended rules and definitions for the administration of the elimination of bias requirement as part of the continuing legal education program in Minnesota. We adopted rules for the elimination of bias requirement, which are now contained in the Rules of the Minnesota Board of Continuing Legal Education.[3]

Rule 2(I) of the Rules of the Minnesota Board of Continuing Legal Education defines continuing legal education courses on the elimination of bias in the legal profession and in the practice of law as courses that are

1. This court has the inherent power to regulate the practice of law in Minnesota. *Sharood v. Hatfield,* 296 Minn. 416, 422–23, 210 N.W.2d 275, 279 (1973). Additionally, Minn. Stat. § 480.05 (2002) provides that we are to "prescribe, * * * amend and modify * * * rules governing the examination and admission to practice of attorneys at law and rules governing their conduct in the practice of their profession * * *."

2. The Board of Continuing Legal Education has supervisory authority over the administration of the Rules of the Minnesota Board of Continuing Legal Education, including the authority to approve courses and programs to satisfy the educational requirement of the rules, subject to the general direction of this court. Rule 3(D), RMBCLE.

3. On April 17, 2000, we adopted the Rules of the Minnesota Board of Continuing Legal Education, effective July 1, 2000, which repealed the Rules of the Minnesota Supreme Court and the State Board for Continuing Legal Education of Members of the Bar, which had governed continuing legal education requirements. By Order dated December 11, 2003, we prescribed and promulgated Amendments to the Rules of the Minnesota Board of Continuing Legal Education, effective February 1, 2004. This opinion cites to the rules, as amended, effective February 1, 2004.

directly related to the practice of law that [are] designed to educate attorneys to identify and eliminate from the legal profession and from the practice of law biases against persons because of race, gender, economic status, creed, color, religion, national origin, disability, age or sexual orientation.

As with all CLE courses, to qualify for credit an elimination of bias course must be approved by the Board. Rule 4, RMBCLE. To be approved, a course: must be identified on an application and described in a narrative as fulfilling the elimination of bias requirement; must focus on issues in the legal profession and in the practice of law and not on issues of bias in society in general; and must not address the substantive law of illegal discrimination unless the course meets one or more of the learning goals for elimination of bias courses. Rule 6(B), RMBCLE.

The learning goals of the elimination of bias requirement are:

1. [T]o educate attorneys about the elimination of bias or prejudice in the legal profession, in the practice of law, and/or in the administration of justice;
2. [T]o educate attorneys regarding barriers to hiring, retention, promotion, professional development and full participation of lawyers of color, women, and those persons referenced in the "Course in the elimination of bias in the legal profession and in the practice of law" definition Rule 2(I) of the Rules of the CLE Board, both in the public and private sector of the legal profession and in the practice of law;
3. [T]o educate attorneys about the problems identified in the Supreme Court's Race Bias and Gender Fairness Task Force Reports, as well as in other

studies, reports or treatises which describe bias and prejudice in the legal profession, in the practice of law, and/or in the administration of justice.

Appendix I, Course Approval Form, RMBCLE.

In his affidavit to the Board for his July 1, 1999 through June 30, 2002 reporting period for continuing legal education credits,[4] Rothenberg reported zero course hours approved for elimination of bias credit. Following a reminder and a final warning, the Board sent Rothenberg a notice of noncompliance. In accordance with Rule 11, RMBCLE, Rothenberg requested a hearing before the Board.

The hearing was held on June 19, 2003. At the hearing, Rothenberg did not dispute his failure to complete two course hours on the elimination of bias. Rothenberg asserted that the elimination of bias requirement was unconstitutional, opining that the findings and conclusions of the Race Bias Task Force Report, which formed the basis for the elimination of bias requirement, were based on dubious claims of bias in Minnesota's justice system. Rothenberg also argued that certain elimination of bias courses promote political beliefs he disagrees with and unconstitutionally promote religion. In particular, Rothenberg referenced courses that he claimed give preferential treatment to Islam and oppose the United States' efforts against terrorism, as well as capital punishment courses that he alleged presented only one side of the issue.

The Board issued findings of fact and conclusions of law, concluding that Rothenberg was in noncompliance with the elimination of bias requirement. The Board did not address Rothenberg's constitution-

---

4. The Minnesota Office of Attorney Registration specifies a three-year period for each lawyer's continuing legal education reporting period. A lawyer must submit an affidavit within 60 days of the close of this three-year period. Rule 9(B), RMBCLE.

al arguments and recommended that if Rothenberg did not seek review of its decision, his license be placed on involuntary restricted status in accordance with Rule 11(F), RMBCLE.

Rothenberg filed a petition for review with this court pursuant to Rule 11(G), RMBCLE, which provides that we "shall give such direction, hold such hearings and make such order[s] as [we] may in [our] discretion deem appropriate." We granted Rothenberg's petition to hear his constitutional arguments, ordering Rothenberg to proceed as appellant and the Board to proceed as respondent.

Rothenberg argues in his brief that the elimination of bias requirement "has turned into an engine of divisive political ideology." As evidence, Rothenberg identifies approximately 10 courses that he claims represent the politicization of the requirement.[5] Rothenberg specifically challenges the Board's approval of certain courses that discuss Islam. Rothenberg argues that these courses fail to discuss issues such as "mass worldwide terrorism, * * * the recruitment of homicide-suicide bombers, aggressive religious jihad, * * * teaching children virulent hatred of non-Muslims and the U.S., misogyny, and slave trading all in the name of religion." The Board, in response, does not address the courses Rothenberg challenges, but points out that Rothenberg has not objected to hundreds of other courses approved for elimination of bias credit during his reporting period.[6]

At oral argument, Rothenberg conceded that "there is prejudice and bias in society" and among lawyers as well. Rothenberg agreed that bigotry, prejudice, and bias "ought to be combated at every turn." Furthermore, he acknowledged that "lawyers and judges should educate themselves, should * * * reflect on these issues, should want to ensure that their conduct as leaders in society and leaders in government does not hurt anyone [and] does not deny anyone's rights on the basis of bigotry or prejudice or bias." Rothenberg also conceded during oral argument that there are "a vast variety of courses" on the elimination of bias. Nevertheless, Rothenberg argued that the operation of the elimination of bias requirement is unconstitutional because "all the courses have an ideological content" and the presence of any ideological courses or any courses discussing religion is unjustified. Therefore, Rothenberg argues, it would be unconstitutional for our court to punish a lawyer for failing to attend courses on the elimination of bias.

## I.

We first consider whether the elimination of bias requirement violates

---

**5.** These courses include: "Representing Muslim and Arab Clients After 9–11: Can the Sixth Amendment Right to Counsel Survive?"; " 'With Justice for All'—An Ethics & Elimination of Bias CLE Featuring Morris Dee"; "Civil Liberties in a Post 9/11 World"; "Impeach Justice Douglas!"—a theatrical performance focusing on several issues with which Justice William O. Douglas was involved during his tenure on the U.S. Supreme Court; and "Presumed Guilty: Eliminating Bias in the Legal System."

**6.** The precise number of other courses presented is unclear. Between July 1, 1999 and June 30, 2002, at least 700 courses were presented for at least one hour of elimination of bias credit in Minnesota. Many of these courses were the same or similar, but the number of different courses, based on the evidence presented to us, was at least 150. These courses appear to encompass a broad range of issues, including "Women in Law Firms," "Working With Immigrant Clients: Cultural and Language Issues," "Disability in the Law," and "Understanding the Special Needs of the Elderly/Disabled," to name just a few.

Rothenberg's First Amendment right to freedom of speech.[7] Rothenberg has framed this issue in different ways, arguing that (1) he is forced to pay for and attend courses presenting beliefs and ideas with which he disagrees, (2) the elimination of bias requirement was designed on an ideological basis, and (3) the Board's approval of courses is ideologically based. We address each of these arguments in the context of the First Amendment's protection against compelled speech or association.

The United States Supreme Court has held that the First Amendment prevents the government from compelling individuals to pay subsidies for speech to which they object. *See Keller v. State Bar of California*, 496 U.S. 1, 14, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990). The Court has recognized that, though there is a need for compulsory dues in contexts such as a labor union or a bar association, it may violate the First Amendment to force a person to contribute money toward a cause with which he or she disagrees. *Id.*; *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 234, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). The "heart of the First Amendment is the notion that an individual should be free to believe as he will, and that in a free society one's beliefs should be shaped by his mind and his conscience rather than coerced by the State." *Abood*, 431 U.S. at 234–35, 97 S.Ct. 1782.

In *Keller*, lawyers challenged the use of state bar dues to fund "ideological or political activities" such as legislative lobbying of political issues. 496 U.S. at 4, 110 S.Ct. 2228. The Supreme Court held that compelled association through an inte-grated bar was justified by California's interest in "regulating the legal profession and improving the quality of legal services." [8] 496 U.S. at 13, 110 S.Ct. 2228. The Court held that dues could be collected from all members to fund any activities germane to those goals. *Id.* at 14, 110 S.Ct. 2228. But, the Court explained, members of the bar could not be compelled to fund activities that were not germane to the goals of regulating the legal profession or improving the quality of legal services and were of an ideological nature. *Id.* The "guiding standard" for whether expenditures are permissible is whether the challenged expenditures are "necessarily or reasonably incurred for the purpose of regulating the legal profession or 'improving the quality of the legal service available to the people of the State.'" *Id.* (quoting *Lathrop v. Donohue*, 367 U.S. 820, 843, 81 S.Ct. 1826, 6 L.Ed.2d 1191 (1961)).

Rothenberg argues that the elimination of bias requirement is unconstitutional because the First Amendment protects him from being compelled to subsidize speech he finds objectionable. However, there is no evidence that Rothenberg is forced to pay for a course or courses discussing ideological or political ideas that he opposes. Rothenberg has identified courses that he disagrees with based on their titles and descriptive materials, but there are hundreds of courses offered to which he has not voiced any objection and that he could take in order to complete the elimination of bias requirement. Rothenberg conceded in oral argument that there are "a vast variety of courses" on the elimination of bias. We conclude that the elimina-

---

7. Rules promulgated by this court are subject to the requirements of the First Amendment. *See Republican Party of Minnesota v. White*, 536 U.S. 765, 788, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002).

8. An "integrated bar" is an "association of attorneys in which membership and dues are required as a condition of practicing law in a State." *Keller*, 496 U.S. at 5, 110 S.Ct. 2228.

tion of bias requirement does not force Rothenberg to pay for courses presenting ideas with which he disagrees.

Moreover, Rothenberg's statements at oral argument indicate that he agrees that eliminating bias in the legal profession and in the practice of law would improve the quality of legal services in Minnesota. Rothenberg concedes that there is prejudice and bias in society, that it ought to be combated at every turn, and that lawyers should ensure that their conduct does not hurt anyone and does not deny anyone's rights on the basis of bigotry, prejudice, or bias. We agree. Based on our review of the elimination of bias requirement, we conclude under the *Keller* analysis that this requirement is germane to the goals of regulating the legal profession and improving the quality of legal services in Minnesota.

▆▆▆▆ Rothenberg also argues that the First Amendment's protection of an individual's freedom of conscience makes the elimination of bias requirement unconstitutional. First Amendment rights may be violated if a state infringes upon an "individual['s] freedom of mind" or conscience. *West Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 637, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); *accord Wooley v. Maynard*, 430 U.S. 705, 714, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (holding that New Hampshire could not punish an individual for blocking out part of his automobile license plate containing the state motto, "Live Free or Die"); *see also Hurley v. Irish–Am. Gay, Lesbian, and Bisexual Group of Boston*, 515 U.S. 557, 573, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) (holding forced association violated the First Amendment when state law forced parade organizers to allow a group with beliefs with which the organizers did not agree to participate in the expressive activity of a parade). "Just as the First Amendment may prevent the government from prohibiting speech, the Amendment may prevent the government from compelling individuals to express certain views." *United States. v. United Foods, Inc.*, 533 U.S. 405, 410, 121 S.Ct. 2334, 150 L.Ed.2d 438 (2001).[9]

9. *Amicus curiae* Peter Swanson argues that the failure to allow lawyers to opt out of the requirement makes the elimination of bias requirement unconstitutional because lawyers are a "captive audience." *See also* Kari M. Dahlin, *Actions Speak Louder Than Thoughts: the Constitutionally Questionable Reach of the Minnesota CLE Elimination of Bias Requirement*, 84 Minn. L.Rev. 1725, 1747–49, 1755 (2000). The captive audience doctrine is based on the notion that, in certain circumstances, the unwillingness of persons to receive a message outweighs another's right to speak. *See* Marcy Strauss, *Redefining the Captive Audience Doctrine*, 19 Hastings Const. L.Q. 85, 86–87 (1991). The Supreme Court has applied the concept of a captive audience to protect an individual when he or she receives an unwanted message in the privacy of one's home. *See Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 72, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983), or when the government is attempting to prevent hate speech, nudity, or other offensive speech in order to protect certain persons from exposure to it in public. *See Lehman v. City of Shaker Heights*, 418 U.S. 298, 302, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) (holding constitutional a city's decision to not allow political or public-issue advertisements on its buses; a plurality relying in part on the fact that the riders of the bus would be captive to such advertising); *Cohen v. California*, 403 U.S. 15, 23, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) (holding unconstitutional the conviction of a defendant for disturbance of the peace for wearing a jacket bearing offensive words in a courthouse despite persons in a courtroom being captive to the message). We have found no case where the Supreme Court has applied the captive audience doctrine in the "negative" sense, that is, where the government requires an individual to be "captive" as opposed to protecting the individual from being captive. Assuming *arguendo* that the captive audience doctrine is relevant in the context of this case, we believe

As discussed above, however, there is no evidence that Rothenberg is forced to attend a course discussing ideas with which he disagrees. Moreover, the elimination of bias requirement is fundamentally different from the activities and behavior addressed by the Supreme Court in *Wooley*, *Barnette*, and *Hurley*. In those cases, individuals were forced to affirmatively express agreement with or pledge allegiance to particular beliefs. The grounds for a First Amendment violation in *Wooley* and *Barnette* were the right to protect autonomy over one's mind; in *Hurley*, the Supreme Court addressed the right of an individual to protect his image in situations where third parties will interpret expressive behavior as an expression of that individual's own beliefs. In contrast, the elimination of bias requirement does not force Minnesota lawyers to say "I believe in X" or manifest agreement with anything. It only requires that Minnesota lawyers be passively exposed to certain ideas by attending courses on the elimination of bias in the legal profession and in the practice of law. For this reason, the California Court of Appeals, which appears to be the only other court to have considered a similar issue, held that a California requirement that lawyers attend classes on elimination of bias does not violate the First Amendment. *See Greenberg v. State Bar of California*, 78 Cal.App.4th 39, 92 Cal. Rptr.2d 493, 496 (2000) (stating that lawyers are merely "passively exposed to classes relating to these subjects, without

being compelled to manifest any agreement or allegiance to their goals or other political agendas."), *rev. denied* (Apr. 26, 2000).

Rothenberg asserts that being forced to pay for a course would make him more than passively exposed to those ideas. However, having concluded that the elimination of bias requirement is germane to the goal of regulating the legal profession and improving the quality of legal services in Minnesota, we also conclude that requiring lawyers to pay for such a course does not raise such concerns.

Rothenberg's other arguments, that the elimination of bias requirement was designed on an ideological basis or that the Board has approved courses on an ideological basis, also lack any support. Rothenberg has presented no evidence that the elimination of bias requirement was designed on an ideological basis or that the Board has approved courses on an ideological basis.[10] In the context of Rothenberg's argument, "ideological" appears to be shorthand for something with which he disagrees. Merely asserting that the elimination of bias requirement has ideological origins or is applied ideologically does not create a cognizable claim.

Moreover, we disagree with Rothenberg's characterization of the elimination of bias requirement as necessarily seeking to inculcate beliefs. Courses approved for elimination of bias credit must be "directly related to the practice of law" and "de-

that it raises essentially the same First Amendment concerns that Rothenberg makes when he argues that he is unconstitutionally forced to attend elimination of bias courses.

10. To support his assertion at the hearing before the Board, Rothenberg cited to an article by Richard Posner entitled *An Army of the Willing*, The New Republic, May 19, 2003, at 27; and an article by Jonathan Kay entitled *Crime by the Numbers*, Commentary, April

2003, at 73. Neither of these articles discusses the Race Bias Task Force Report nor provides any basis for the assertion that the elimination of bias requirement is ideologically-based, much less unconstitutional. In his brief to this court, Rothenberg cites to a newspaper article that discusses generally the Race Bias Task Force Report. Dave Peterson and Paul Gustafson, *Accuracy or Advocacy? Bias Report Challenged*, Minneapolis Star Trib., June 27, 1993, at 1B.

signed to educate attorneys to identify and eliminate [bias] from the legal profession and from the practice of law." Rule 2(I), RMBCLE. These courses must be designed to meet educational goals such as educating lawyers regarding barriers to hiring, retention, promotion, and professional development of lawyers of color, women, and others. Such goals illustrate that the elimination of bias requirement seeks to change behavior by informing lawyers how to identify and eliminate bias. For purposes of reference, a course presented in 2001 and discussed in the record before us was entitled "Understanding Deaf Culture and Working with Deaf Clients." The materials for this course state that its objectives include identifying specific needs of people who are deaf with respect to communication and adaptive equipment and identifying ways of enhancing communication.

We conclude that the elimination of bias requirement serves the legitimate function of informing lawyers how to identify and eliminate bias in the legal system. We recognize Rothenberg's disagreement with the views expressed by some of the approved elimination of bias courses. However, our decision to prescribe rules allowing a broad array of courses that could qualify for elimination of bias credit was made after taking into consideration concerns by members of the bar who cautioned against having a limited view of what constitutes bias.

For the foregoing reasons, we hold that the elimination of bias requirement does not violate Rothenberg's First Amendment right to freedom of speech. We acknowledge, however, that Rothenberg's appeal highlights the need to have courses that are well designed to meet the goals set forth and the definitions provided by the Rules of the Minnesota Board of Continuing Legal Education. Accordingly, we urge the Board to exercise continued vigilance as it reviews and approves courses for the elimination of bias credit.

## II.

We next address Rothenberg's argument that the elimination of bias requirement violates the Establishment Clause of the First Amendment because the Board has approved courses that promote religion. The First Amendment prevents the government from making any law "respecting an establishment of religion * * *." U.S. Const. amend. I. A state law, though facially nondiscriminatory, may violate the Establishment Clause if it fails to meet a three-pronged test: (1) it must have a secular purpose; (2) its principal or primary effect must be one that neither advances nor inhibits religion; and (3) it must not foster excessive government entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).

Rothenberg does not appear to contest that the elimination of bias requirement has a secular purpose, but argues that the elimination of bias requirement violates the Establishment Clause because the Board has approved courses that give "special emphasis to propagating approval of or at least sympathy for Islam." Rothenberg argues that there are no courses on anti-Semitism, for example, but there are courses on Islam such as "Understanding Islam and Working with Muslim Clients" and "Enhancing Your Knowledge of Somali and Islamic Cultures." Materials for these courses illustrate that they do include discussion of the religious tenets and values of Islam in an effort to educate and inform Minnesota lawyers in order to allow them to better serve their clients. Rothenberg takes issue with the courses' lack of discussion of Islamic-based terrorism, but he fails to articulate why such a discus-

sion would be appropriate in courses with the purpose of improving lawyers' ability to work with Muslim clients in order to eliminate biases in the legal system that Rothenberg acknowledges exist among lawyers. Based on the course materials and the record before us, we conclude that the Board's approval of these courses does not have the primary effect of advancing or inhibiting religion. *See Zelman v. Simmons–Harris,* 536 U.S. 639, 683–84, 122 S.Ct. 2460, 153 L.Ed.2d 604 (2002) (holding school voucher program enacted for valid secular purpose and facially neutral toward religion did not violate the Establishment Clause because it did not provide a preference for religion.)

Rothenberg concedes, and the record demonstrates, that lawyers have a wide variety of courses from which to choose to fulfill the elimination of bias requirement. It appears that only a few out of the hundreds of these courses discuss religious beliefs. We conclude that the fact that lawyers have the opportunity to take courses on the elimination of bias that discuss religion in the context of educating lawyers to better serve their clients does not excessively entangle the state in religion. *See School Dist. of Abington Tp., Pa. v. Schempp,* 374 U.S. 203, 226, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (holding that a state law requiring the reading of verses from the Bible and the recitation of the Lord's Prayer at the beginning of each school day was unconstitutional; distinguishing this activity from studying the Bible in a literature or comparative religion course, which would be permissible).

Accordingly, we hold that, when meeting the elimination of bias requirement, the Board's approval of certain courses that include a discussion of religion in the context of eliminating bias in the legal profession and in the practice of law does not violate the Establishment Clause.

### III.

■ Rothenberg also asserts that the elimination of bias requirement, as applied, violates the Freedom of Conscience Clause of the Minnesota Constitution. Article I, section 16 of the Minnesota Constitution provides:

**Freedom of conscience; no preference to be given to any religious establishment or mode of worship.** The enumeration of rights in this constitution shall not deny or impair others retained by and inherent in the people. The right of every man to worship God according to the dictates of his own conscience shall never be infringed; nor shall any man be compelled to attend, erect or support any place of worship, or to maintain any religious or ecclesiastical ministry, against his consent; nor shall any control of or interference with the rights of conscience be permitted, or any preference be given by law to any religious establishment or mode of worship; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace or safety of the state, nor shall any money be drawn from the treasury for the benefit of any religious societies or religious or theological seminaries.

In *State v. Hershberger,* we applied the Freedom of Conscience Clause to afford greater protection for religious liberties than the First Amendment. 462 N.W.2d 393 (Minn.1990). We held that a state statute requiring the display of a slow-moving vehicle emblem was unconstitutional as applied to Amish defendants because the statute violated the defendants' freedom of conscience. *Id. Hershberger* was decided on remand after the Supreme Court vacated our earlier decision holding that the statute violated the defendants'

First Amendment free exercise rights. *Minnesota v. Hershberger*, 495 U.S. 901, 110 S.Ct. 1918, 109 L.Ed.2d 282 (1990).

Rothenberg does not present any arguments why the elimination of bias requirement violates his freedom of conscience—he only asserts that the clause grants more protection than the First Amendment. Rothenberg cites *Rasmussen v. Glass*, in which the Minnesota Court of Appeals held that a city ordinance requiring a restaurant owner to deliver food to a medical facility that performed abortions, which the owner strongly opposed, violated the owner's rights under the Freedom of Conscience Clause. 498 N.W.2d 508, 516 (Minn.App.1993). *Rasmussen*, like *Hershberger*, applied the compelling state interest balancing test to conclude that a state law burdened an individual's exercise of religion. It is not clear to us, however, how the elimination of bias requirement could burden Rothenberg's free exercise of religion. As we have already concluded, Rothenberg had numerous choices of courses to meet the elimination of bias requirement and he has not shown that he had no choice but to violate his freedom of conscience. Accordingly, we hold that, when meeting the elimination of bias requirement, the Board's approval of courses that include a discussion of religion in the context of eliminating bias in the legal profession and in the practice of law does not violate Rothenberg's rights under article I, section 16 of the Minnesota Constitution.

### IV.

Having concluded that the elimination of bias requirement does not violate Rothenberg's constitutional rights, we are left with the Board's conclusion that Rothenberg is in noncompliance with Rule 9(A)(2), RMBCLE. Because Rothenberg does not dispute that he is in noncompliance with the requirement, we adopt this conclusion and must decide the appropriate action to resolve this case. *See* Rules 11(F) & 11(G), RMBCLE. In making this determination, we are mindful of the fact that Rothenberg is a long-time member of the Minnesota bar in good standing and has made good faith arguments in challenging the constitutionality of the elimination of bias requirement. We are also mindful that the Rules of the Minnesota Board of Continuing Legal Education do not provide a method for a lawyer with concerns about the content of continuing legal education courses to challenge these courses and that failing to comply with the requirements and requesting a hearing before the Board was, in this case, a way for Rothenberg to express his concerns.

Therefore, we order that petitioner Elliot Rothenberg comply with the elimination of bias requirement for his July 1, 1999 through June 30, 2002 continuing legal education reporting period. He may do so by attending a qualifying course or courses and by submitting an Affidavit of CLE Compliance for this period by July 1, 2004 in accordance with Rule 9(A)(2), RMBCLE. If Rothenberg fails to comply with this order by such date, his license shall be placed on involuntary restricted status as defined by Rule 2(L), RMBCLE, subject to the restrictions of Rule 12, RMBCLE.

It is so ordered.