**STATE of Minnesota, Respondent,**

v.

**Ronald Joseph LEMMER, Appellant.**

No. A05–2481.

Supreme Court of Minnesota.

Aug. 9, 2007.

Jeffrey S. Sheridan, Strandemo, Sheridan & Dulas, PA, Eagan, MN, for Appellant.

Lori Swanson, Attorney General, St. Paul, MN, Patrick J. Ciliberto, Scott County Attorney, Michael J. Groh, Asst. Scott County Attorney, Shakopee, MN, for Respondent.

## OPINION

MEYER, Justice.

Following his arrest for boating while impaired, appellant Ronald Joseph Lemmer challenged the administrative revocation of his driver's license as permitted under Minnesota's implied consent law. After an implied consent hearing, the district court concluded that the deputy sheriff did not have a particularized and objective basis for stopping Lemmer and rescinded the revocation of Lemmer's license. At the subsequent driving while intoxicated (DWI) criminal prosecution, Lemmer asserted that the state was collaterally estopped from relitigating the validity of the stop and argued that Minn. Stat. § 169A.53, subd. 3(g) (2006), which limits the applicability of collateral estoppel between implied consent proceedings and criminal DWI prosecutions, is an unconstitutional violation of the separation of powers doctrine. The district court concluded that section 169A.53, subd. 3(g), is unconstitutional and dismissed the criminal charges against Lemmer. On appeal, the court of appeals concluded that section 169A.53, subd. 3(g), does not violate the separation of powers doctrine and reversed and remanded for trial. We affirm the court of appeals, but on different grounds.

On June 4, 2005, a Scott County Deputy Sheriff was investigating a DWI suspect who had left the scene of a traffic accident and fled to Lemmer's house. The suspect requested use of Lemmer's boat, and when Lemmer declined to allow the boat's use, the suspect obtained control of Lemmer's boat. Lemmer boarded the boat to protect his property, and with Lemmer on board, the suspect used Lemmer's boat to evade the authorities. Eventually, the suspect docked and left the boat, at which time he was quickly apprehended by the authorities. Meanwhile, Lemmer, having regained control of the boat, proceeded across the lake to his home. Lemmer was followed by a Scott County Deputy Sheriff, who stopped Lemmer and boarded his boat. After noticing evidence of intoxication, the deputy performed field sobriety tests and arrested Lemmer for boating while under the influence of alcohol.[1]

After his arrest, Lemmer was transported to the Scott County Jail where he consented to taking an Intoxilyzer 500 test, which indicated that Lemmer had an alcohol concentration of .12. Based on the test results, Lemmer's driver's license was revoked under the implied consent law. This was a civil revocation. Because Lemmer's alcohol concentration was over .10 and Lemmer had a previous impaired driving incident in 2000, Lemmer was charged with DWI in the third degree—alcohol concentration over .10; and DWI in the third degree—prior impaired driving incident within ten years, in violation of Minn. Stat. § 169A.20, subd. 1(1), (5) (2006), and Minn.Stat. § 169A.26 (2006).

Lemmer had an implied consent hearing on August 1, 2005, to challenge the license revocation. At the implied consent hearing, the Commissioner of Public Safety was represented by an assistant attorney general. Although Lemmer's attorney sent the Scott County Attorney's Office, which serves as the prosecuting attorney for DWI cases, a letter informing them of the hearing, the county did not attend. Based on findings made during the implied consent hearing, the district court concluded that there was no particularized and objective basis for pursuing Lemmer and

1. A motorboat is defined as a motor vehicle under Minnesota's DWI laws. Minn.Stat. § 169A.03, subd. 15 (2006).

rescinded the revocation of Lemmer's driving privileges.

An omnibus hearing regarding the criminal charges was held after the implied consent hearing. Lemmer brought a motion to dismiss the criminal charges, claiming that the state was estopped from relitigating issues decided in the implied consent hearing and arguing that Minn. Stat. § 169A.53, subd. 3(g), which legislatively eliminated the applicability of collateral estoppel to DWI prosecutions, is unconstitutional because it violates the separation of powers doctrine. At the omnibus hearing, the district court considered both Lemmer's argument and an order in *State v. Brunclik,* No. T8–04–4705 (Minn.Dist.Ct. Nov. 8, 2005), that found Minn.Stat. § 169A.53, subd. 3(g), unconstitutional and enjoined "the State of Minnesota, and its various political subdivisions" from enforcing the statute.[2] The district court took *Brunclik* into consideration and issued an order adopting the reasoning of *Brunclik* and dismissing the charges against Lemmer.

The state appealed, arguing that the district court erred when it concluded that Minn.Stat. § 169A.53, subd. 3(g), is unconstitutional. Lemmer filed a motion to strike the state's arguments regarding the constitutionality of the statute, arguing that any attacks on the constitutionality of Minn.Stat. § 169A.53, subd. 3(g), constituted an impermissible collateral attack on the injunction issued in *Brunclik.* The court of appeals concluded that the state was challenging whether the district court's order was properly supported by

the *Brunclik* decision, that the injunction was included by reference, and that the issue was properly before the court. *State v. Lemmer,* 716 N.W.2d 657, 661 (Minn. App.2006). The court of appeals, concluding that Minn.Stat. § 169A.53, subd. 3(g), is constitutional, denied Lemmer's motion to strike, reversed the decision of the district court, and remanded the case for trial.

I.

In Minnesota, an arrest for DWI potentially results in two types of penalties in two separate proceedings, a civil proceeding (implied consent proceeding) under the implied consent law, Minn.Stat. §§ 169A.50–169A.53 (2006), which involves the revocation of the defendant's driver's license, and a criminal proceeding for DWI (DWI prosecution) under Minn.Stat. §§ 169A.20–169A.37 (2006), which involves criminal punishment.

Under the implied consent law, any individual "who drives, operates, or is in physical control of a motor vehicle within this state or on any boundary water of this state consents * * * to a chemical test of that person's blood, breath or urine for the purpose of determining the presence of alcohol." Minn.Stat. § 169A.51, subd. 1(a) (2006). If the individual refuses to take the chemical test or fails the test, the Commissioner of Public Safety may revoke the individual's license or permit to drive. Minn.Stat. § 169A.52, subds. 3–4 (2006).[3] This revocation occurs prior to the implied consent hearing. Once an individual's license has been revoked, he or she may

---

**2.** The state did not appeal the *Brunclik* decision.

**3.** Minnesota Statutes § 169A.52, subds. 3–4 were amended in 2005. *See* Act of June 2, 2005, ch. 136, art. 18, § 3, 2005 Minn. Laws 901, 1157–58 (amending subdivision 4); Act of July 14, 2005, ch. 6, art. 3, § 54, 2005

Minn. Laws 1st Spec. Sess. 2941, 3030–31 (amending subdivision 3). Because none of the relevant language in the statutory provisions cited in this opinion was changed, for simplicity all statutory citations to Minn.Stat. § 169A.52 are to the 2006 edition of the Minnesota Statutes.

request judicial review of that revocation.[4] Minn.Stat. § 169A.53 (2006).[5] The implied consent hearing occurs before a district court judge, and the parties before the court are the Commissioner of Public Safety, represented by the attorney general or the prosecuting attorney for the jurisdiction involved, and the defendant. *See* Minn.Stat. § 169A.53, subd. 3(a). The proceeding is governed by the Minnesota Rules of Civil Procedure, Minn.Stat. § 169A.53, subd. 2(d), and the scope of the hearing is limited to ten issues enumerated in section 169A.53, subd. 3(b).

In the criminal proceeding, the parties before the court are the state, represented by the attorney in the jurisdiction in which the impaired driving offense occurred, and the defendant. *See* Minn.Stat. § 169A.43, subd. 2 (2006). In this case, the prosecuting attorney was the Scott County Attorney, whose authority to prosecute impaired driving offenses arises from Minn.Stat. § 388.051 (2006). Because the offense is a criminal matter, the Minnesota Rules of Criminal Procedure apply, the defendant is afforded the protections due to him by both the federal and state constitutions, and the state is held to a higher burden of proof.

Issues addressed in implied consent proceedings are sometimes identical to issues addressed in DWI prosecutions. *Compare* Minn.Stat. § 169A.20, subd. 1 (2006) (outlining the DWI elements that include operating or being in physical control of any motor vehicle, being under the influence of alcohol, and having an alcohol concentration of 0.08 or more), *with* Minn.Stat. § 169A.52, subd. 4 (providing for license revocation where an individual is operating or in physical control of a motor vehicle, and test results show an alcohol concentration of 0.08 or more). In 2001, the court of appeals held that collateral estoppel could be asserted in a criminal prosecution if the identical issue had been litigated in an implied consent hearing. *State v. Victorsen,* 627 N.W.2d 655 (Minn.App.2001). The *Victorsen* court determined that privity existed between the Commissioner of Public Safety in the implied consent proceeding and the state in the DWI prosecution because the statutory changes that had increased the potential criminal penalties on the basis of civil license revocation had made the relationship between the state and the commissioner "symbiotic" and the differing interests of the parties had become a "fictional construct." *Id.* at 661–63. After concluding that the parties were in privity, the court then held that if the prosecuting attorney for the criminal matter was given notice of an implied consent hearing and the attorney failed to attend, the state would be estopped from relitigating any issue decided against it at the implied consent hearing. *Id.* at 664. During the next legislative session, the legislature enacted Minn.Stat. § 169A.53, subd. 3(g), abrogating *Victorsen.* Act of Apr. 4, 2002, ch. 314, § 1, 2002 Minn. Laws 509, 510–11. Under section 169A.53, subd. 3(g), the implied consent hearing does "not

---

4. Under Minn.Stat. § 169A.53, subd. 1, an individual may also request administrative review of the revocation. The administrative review proceedings are not at issue in this case.

5. Section 169A.53, subd. 3, was amended in 2005 in response to this court's opinion in *Fedziuk v. Comm'r of Pub. Safety. See* Act of June 2, 2005, ch. 136, art. 18, § 4, 2005 Minn. Laws 901, 1158–60. *Fedziuk* conclud-

ed the 2003 amendments to section 169A.53, which eliminated a specific time frame for judicial review of license revocation, were unconstitutional and revived section 169A.53 to the version that existed prior to the amendments. 696 N.W.2d 340, 348–49 (Minn. 2005). Because the timing of the hearing is not at issue in this case, we will refer to the 2006 version of the statute.

give rise to an estoppel on any issues arising from the same set of circumstances in any criminal prosecution." The constitutionality of this legislative amendment is the basis for Lemmer's appeal.

## II.

Before we reach the constitutionality of Minn.Stat. § 169A.53, subd. 3(g), we must first address whether the state had standing to appeal the decision of the district court. Lemmer asserts that the state's appeal constitutes an impermissible collateral attack on the *Brunclik* order enjoining the state from enforcing Minn.Stat. § 169A.53, subd. 3(g). Lemmer contends parties may not collaterally attack appealable orders for any reason other than lack of jurisdiction. The state counters that Lemmer has not preserved this issue for appeal because Lemmer only challenged the constitutionality of Minn.Stat. § 169A.53, subd. 3(g), and enforcement of the *Brunlick* injunction was never an issue before the district court.

■ On appeal, we will usually not decide issues that have not been first addressed by the district court and are raised for the first time on appeal, even if the issues involve constitutional questions regarding criminal procedure. *State v. Sorenson*, 441 N.W.2d 455, 457 (Minn. 1989). Lemmer's motion to dismiss his criminal charges addressed only the constitutionality of Minn.Stat. § 169A.53, subd. 3(g). The *Brunclik* order was filed on November 8, 2005. In that order, the district court enjoined "the State of Minnesota, and its various political subdivisions * * * from enforcing or attempting to enforce the provisions of Minnesota Statute § 169A.53, subd. 3(g)." Lemmer's omnibus hearing was nine days later on November 17. Although it is evident that the district court was aware of the *Brunclik* decision, the record does not indicate that

Lemmer sought to enforce the *Brunclik* injunction.

In fact, the only reference to the *Brunclik* decision was the court's statement that it "was aware that [the *Brunclik* court] struck down the applicable statute as unconstitutional and has enjoined it[s] enforcement. * * * [T]he Court took the matter under advisement." Lemmer was given an opportunity to make an additional record on the matter, at which point he could have argued that the Scott County Attorney was enjoined from attempting to enforce Minn.Stat. § 169A.53, subd. 3(g). However, the record mentions only pretrial alcohol testing and contains no mention of enforcing the *Brunclik* injunction. Based on the record before us, we conclude that Lemmer only challenged the constitutionality of Minn.Stat. § 169A.53, subd. 3(g). Because Lemmer did not seek to enforce the *Brunclik* injunction at the district court level, we decline to address the issue now.

## III.

■ We now turn to the question of whether Minn.Stat. § 169A.53, subd. 3(g), is an unconstitutional violation of the separation of powers doctrine. The Minnesota constitution separates the government "into three distinct departments: legislative, executive and judicial. No person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution." Minn. Const. art. III, § 1. Respect for the co-equal branches of government "requires the court to exercise great restraint before striking down a statute as unconstitutional, particularly when it involves a determination of what is a legislative and what is a judicial function." *State v. Willis*, 332 N.W.2d 180, 184 (Minn.1983). In the sepa-

ration of powers context, a statute is constitutional when it "in no way interferes with the judiciary's function of ascertaining facts and applying the law to the facts established." Id.

■■■ Minnesota statutes are presumed constitutional, and our power to declare a statute unconstitutional is exercised with extreme caution and only when absolutely necessary. *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989). We review the constitutionality of a statute de novo. *State v. Losh*, 721 N.W.2d 886, 891 (Minn.2006). The party challenging a statute bears the burden of demonstrating beyond a reasonable doubt a violation of some provision of the Minnesota Constitution. *In re Haggerty*, 448 N.W.2d at 364.

Lemmer argues that Minn.Stat. § 169A.53, subd. 3(g), is unconstitutional because the legislature regulated a procedural matter and the power to regulate procedural matters belongs to the judicial branch. Lemmer contends that the court of appeals erred when it determined that collateral estoppel is a substantive issue based on the "outcome determinative" analysis utilized by federal courts in diversity jurisdiction cases. Lemmer contends that procedural issues are frequently outcome determinative and the substantive impact on the litigation's outcome does not change the procedural nature of collateral estoppel.

The state asserts that collateral estoppel is a common law doctrine and as such the legislature has the authority to modify common law. In the alternative, the state argues that collateral estoppel is a substantive rule and therefore may be modified by the legislature without violating the separation of powers doctrine.

■■■ We first reject the state's argument that only the legislature may modify any aspect of common law. It is an ac-

cepted principle that this court may modify common law. *Lake v. Wal–Mart Stores, Inc.*, 582 N.W.2d 231, 233 (Minn.1998). Because both the judicial and legislative branches may modify common law, the important question becomes who has the authority to modify common law in this situation. When determining whether a statute impermissibly infringes on a judicial function, we examine the nature of the statute. The judicial branch governs procedural matters, while the creation of substantive law is a legislative function. *State v. Johnson*, 514 N.W.2d 551, 554 (Minn. 1994).

■■ In *State v. Johnson*, we defined what is a substantive rule and what is a procedural rule. A rule is procedural " 'when it neither creates a new cause of action nor deprives defendant of any defense on the merits' " but merely regulates how guilt or innocence is determined. *Id.* at 554–55 (internal quotation marks omitted); *see State v. Wingo*, 266 N.W.2d 508, 513 (Minn.1978). Consistent with this definition, we have concluded that evidentiary matters and matters of trial and appellate procedure are procedural rules governed by the judicial branch. *State v. Lindsey*, 632 N.W.2d 652, 658–59 (Minn.2001) (concluding that a statute barring minors from criminal trials "has nothing to do with defining crimes or prescribing punishments"). Although legislative enactments have addressed procedural issues, we have permitted legislative interference with procedural matters only as a matter of comity. *See Losh*, 721 N.W.2d at 892. In contrast, substantive rules are those that create, define, and regulate rights, declare "what acts are crimes[,] and prescribe punishment for their violation[s]." *Johnson*, 514 N.W.2d at 554 (internal quotation marks omitted). We have also recognized that in some instances a rule may be both procedural and substantive in nature. *Id.* at 555

? 

(explaining that the statutes of limitations were "procedural in that they regulate when a party may file a lawsuit and are substantive in that they are outcome determinative").

■ Collateral estoppel "precludes parties to an action from relitigating in subsequent actions issues that were determined in the prior action." *In re Village of Byron*, 255 N.W.2d 226, 228 (Minn. 1977). In other words, collateral estoppel stands for the principle of *issue* preclusion. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn.2004); *Hauser v. Mealey*, 263 N.W.2d 803, 806 (Minn.1978). It does not stand for the principle of *claim* preclusion.

■ Because collateral estoppel bars only the relitigation of certain issues, we conclude that collateral estoppel is not substantive in function. Nothing in the application of collateral estoppel creates, defines, or regulates rights, defines a crime, or prescribes punishment. Instead, collateral estoppel functions like an evidentiary ruling. Where collateral estoppel is applied, the party is simply precluded from presenting evidence that would result in the relitigation of a previously litigated issue. Since collateral estoppel only prevents parties from presenting evidence about an issue that has been previously litigated, collateral estoppel does not necessarily bar a case from moving forward.

For instance, in this case, evidence of the police stop was suppressed at Lemmer's implied consent proceeding. In the subsequent DWI prosecution, Lemmer brought a motion to suppress evidence of the police stop, arguing that the state was estopped from relitigating the *issue* of the initial stop. Because the only evidence of Lemmer's intoxication flowed from that stop, the natural consequence of applying collateral estoppel to this case would be that the case would be dismissed. But,

despite the bar on relitigating this issue, if the state had sufficient evidence of intoxication unrelated to the stop, the state would have been able to proceed in its *claim* against Lemmer.

Additionally, we reject any contention that collateral estoppel is both a procedural and substantive rule. Although collateral estoppel bars the state's claim entirely in this case, making it "outcome determinative" in this instance, collateral estoppel is not *always* outcome determinative. Unlike other doctrines that involve both procedural and substantive rules, collateral estoppel does not consistently contain a substantive element. When discussing the possibility of rules containing both a substantive and procedural element, we note that the statute of limitations is both procedural and substantive because as a procedural rule it regulates when a claim may be brought but as a substantive rule it determines outcomes because when the statute of limitations has tolled the claim can no longer be brought. *Johnson*, 514 N.W.2d at 555. We believe that a key consideration in determining that the statute of limitations is substantive is that the statute of limitations will always bar claims if the statute has tolled. In contrast, the application of collateral estoppel will not consistently preclude litigation of the claim because collateral estoppel only prevents the relitigation of issues, leaving open the possibility that a claim could still proceed even absent the ability to address the estopped issue. Therefore, to the extent that the application of collateral estopppel has barred the state from prosecuting defendants in criminal proceedings, such a bar is only an incidental and indirect effect of its application.

## IV.

■ Because we have concluded that collateral estoppel is a procedural rule gov-

erned by this court, we must now determine, as applied to the facts of this case, whether collateral estoppel prevents the litigation of an issue in a DWI prosecution that was previously litigated in an implied consent proceeding. Whether collateral estoppel precludes litigation of an issue is a mixed question of law and fact that is reviewed de novo. *Hauschildt*, 686 N.W.2d at 837.

■■■ Collateral estoppel may be applied when:

(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Willems v. Comm'r of Pub. Safety*, 333 N.W.2d 619, 621 (Minn.1983) (quoting *Victory Highway Village, Inc. v. Weaver*, 480 F.Supp. 71, 74 (D.Minn.1979)). We do not rigidly apply collateral estoppel, and we will not apply collateral estoppel if its application would work an injustice on the party to be estopped. *See Hauschildt*, 686 N.W.2d at 837; *Johnson v. Consol. Freightways, Inc.*, 420 N.W.2d 608, 613–14 (Minn.1988).

■■ In applying collateral estoppel in this case, we will examine all four factors.

### A. Identity of Issues

In this case neither party disputes that factor one, identity of issues, is met. At the implied consent proceeding the district court found that the deputy sheriff had no particularized basis to stop Lemmer. Because the stop was illegal, all of the evidence obtained from the stop, including the breath test that established that Lemmer was intoxicated, was suppressed as a fruit of that illegal seizure. In the DWI prosecution, the state may only prosecute Lemmer if it is able to introduce the evidence of his intoxication, which was obtained as a result of the wrongful stop, putting the legality of the stop at issue. Therefore, we conclude that the issue decided in the implied consent proceeding is identical to the one to be decided in the DWI prosecution.

### B. Final Judgment on Merits

Factor two, that there was a final judgment on the merits, is also met. A judicial hearing was held under Minn.Stat. § 169A.53 to review the revocation of Lemmer's license. At that hearing, the district court concluded that the evidence against Lemmer should be suppressed and rescinded the commissioner's revocation of Lemmer's driver's license. The Commissioner of Public Safety had a right to appeal this ruling under Minn.Stat. § 169A.53, subd. 3(f) but did not exercise that right. Because the Commissioner of Public Safety failed to exercise its right of appeal, the district court's ruling is a final judgment on the merits. *See* Restatement (Second) of Judgments § 13, cmt. b (1982) ("[A] judgment will ordinarily be considered final in respect to a claim * * * if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court * * *.").

### C. The Estopped Party Is in Privity with the Party to the Prior Adjudication

There is significant disagreement over factor three, whether the estopped party— the state—was a party or in privity with a party to the prior adjudication—the Commissioner of Public Safety. Lemmer argues that we need not determine whether the State of Minnesota, as represented by the Scott County Attorney, and the Com-

missioner of Public Safety are in privity because the two entities are actually the same party—the State of Minnesota. The state contends that it was not in privity with the commissioner because it had no control over the litigation and had no authority to seek appellate review of the implied consent determination. The state also emphasizes that commonality of interest alone is not sufficient to find privity and suggests that the differing functions of the Commissioner of Public Safety and the state weigh against finding privity. We will address both parties' arguments in turn.

First, we reject Lemmer's argument that the state and the Commissioner of Public Safety are the same party. In *State, Department of Public Safety v. House*, we concluded that a prosecuting attorney, who represented the state in the criminal DWI prosecution, did not have the authority to execute a plea bargain dismissing the subsequent implied consent proceeding, which was brought by the Commissioner of Public Safety. 291 Minn. 424, 425–26, 192 N.W.2d 93, 94–95 (1971). *House* examined the distinctions between the two proceedings, noting that the Commissioner of Public Safety was the individual party to the implied consent action, based upon the commissioner's statutory duties. 291 Minn. at 426, 192 N.W.2d at 95. In contrast, the county attorney acts as the attorney for the state in all criminal matters within the county and has no authority to act in civil cases, such as implied consent proceedings, in which the state is a party. Id. at 425, 192 N.W.2d at 95. These statutory distinctions remain today. *See* Minn.Stat. § 8.06 (2006) (granting the authority to act for

state officers, such as the Commissioner of Public Safety, to the Attorney General); Minn.Stat. § 169A.43, subd. 2 (2006) (establishing that prosecution of DWI offenses is the responsibility of the attorney within the jurisdiction where the offense occurred); Minn.Stat. § 388.051 (2006) [6] (outlining the duties of the county attorney, which include prosecuting felonies, and to the extent prescribed by law, gross misdemeanors, misdemeanors, and petty misdemeanors). After examining the implied consent proceeding and the criminal DWI prosecution, we stated that the two proceedings were "related only to the extent that they both generally grow out of the same set of facts" and noted that "the parties to the proceedings are not the same." *House*, 291 Minn. at 425, 192 N.W.2d at 94–95. We conclude that the reasoning of *House* remains sound and, therefore, conclude that the state and the commissioner are not the same party.

Because we reject Lemmer's argument that the state and the Commissioner of Public Safety are the same party, we must now consider whether the Commissioner of Public Safety and the State of Minnesota are in privity. To determine whether privity exists, we carefully examine the circumstances of each case. *Margo–Kraft Distribs., Inc. v. Minneapolis Gas Co.*, 294 Minn. 274, 278, 200 N.W.2d 45, 47 (1972). Commonality of interests alone is insufficient to establish privity. *Pirrotta v. Indep. Sch. Dist. No. 347*, 396 N.W.2d 20, 22 (Minn.1986); *see also State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114, 124 (1995) (stating that privity is not established merely because parties are interested in the same question or

---

**6.** In *House*, the court relied on Minn.Stat. § 388.05, *see House*, 291 Minn. at 425, 192 N.W.2d at 95, which was repealed in 1979. Minnesota Statutes § 388.051 contains essentially the same language as Minn.Stat.

§ 388.05. Any changes are largely matters of formatting rather than substance. *Compare* Minn.Stat. § 388.05 (1978), *with* Minn.Stat. § 388.051, subd. 1 (2006).

proving the same facts); *State v. Fritz*, 204 Conn. 156, 527 A.2d 1157, 1165 (1987) (same), *overruled on other grounds by State v. Crawford*, 257 Conn. 769, 778 A.2d 947 (2001). Rather, when determining whether privity exists, the proper focus is on whether the legal rights of the party to be estopped were adequately represented by the party to the first litigation. *Fritz*, 527 A.2d at 1166; *see also Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 403, 60 S.Ct. 907, 84 L.Ed. 1263 (1940) (noting that officers of the same government may be in privity, but that the "crucial point [in determining whether privity exists] is whether or not in the earlier litigation the representative of the United States had authority to represent its interests in a final adjudication of the issue in controversy").

■ This court bases its privity determination on whether the party to be estopped (1) had a controlling participation in the first action, (2) had an active self-interest in the previous litigation, *County of Ramsey v. Stevens*, 283 N.W.2d 918, 924 (Minn.1979), or (3) had a right to appeal from a prior judgment, *Kaiser v. N. States Power Co.*, 353 N.W.2d 899, 904 (Minn. 1984). A party to be estopped has control of the first action if it has a choice about legal theories and proofs to be advanced on behalf of the party to the action and control over the ability to obtain review of the judgment. Restatement (Second) of Judgments § 39, cmt. c; *see Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 864 n. 3 (5th Cir.1985). Although the general rule is that litigation by one state agency is binding on other agencies of the same government, "exceptions may be warranted if there are important differences in the authority of the respective agencies." 18A Charles Alan Wright, et al., *Federal Practice and Procedure* § 4458, at 560 (2d ed.2002). Collateral estoppel will not apply between the two government agencies

> [i]f the second action involves an agency or official whose functions and responsibilities are so distinct from those of the agency or official in the first action that applying preclusion would interfere with the proper allocation of authority between them.

Restatement (Second) of Judgments § 36, cmt. f.

We conclude that in this case the differing functions and responsibilities of the Commissioner of Public Safety and the State of Minnesota are sufficiently distinct to support the conclusion that the parties are not in privity. It is undeniable that at one level there is a connection between the State of Minnesota and the Commissioner of Public Safety; the latter directs an agency of the former. But we do not believe that alone is determinative. *See Huelsman v. Kan. Dep't of Revenue*, 267 Kan. 456, 980 P.2d 1022, 1025 (1999) (noting that the fact that a city exists by virtue of laws adopted by the state is not determinative in deciding whether a city prosecutor and state administrative agency are in privity). The Department of Public Safety, which is headed by the commissioner, was established for the purpose of regulating drivers' licensing and safety responsibility. *See* Minn.Stat. § 171.015 (2006). That purpose is separate and distinct from the prosecution of crimes, which is the function that the state is serving in the DWI prosecution. The state specifically delegates the duties of prosecuting crimes to the offices of county attorneys and city attorneys. *See* Minn.Stat. § 388.051 (outlining the duties of the county attorney); Minn.Stat. § 487.25, subd. 10 (2004) (outlining the authority of attorneys of municipalities and statutory or home rule cities to prosecute certain crimes) (current version at Minn.Stat. § 484.87,

subds. 2–3 (2006)); Minn.Stat. § 488A.10, subd. 11 (2004) (outlining the authority of attorneys of municipalities and statutory or home rule cities within Hennepin County to prosecute certain crimes) (current version at Minn.Stat. § 484.87, subds. 2–3 (2006)); Minn.Stat. § 488A.27, subd. 11 (outlining the authority of attorneys of municipalities and statutory or home rule cities within Ramsey County to prosecute certain crimes) (current version at Minn. Stat. § 484.87, subds. 2–3 (2006)).

With respect to the prosecution of crimes, the state acts almost exclusively through county attorneys or city attorneys. The attorney general plays only a limited role in criminal prosecutions and then only at the request of the county attorney or the governor. Minn.Stat. § 8.01 (2006) ("Upon request of the county attorney, the attorney general shall appear in court in such criminal cases * * *. Whenever the governor shall so request, in writing, the attorney general shall prosecute any person charged with an indictable offense, and in all such cases may attend upon the grand jury and exercise powers of a county attorney."). Therefore, although the Commissioner of Public Safety may have been an agent of the state in the license revocation proceeding, the commissioner's role and responsibilities are so distinct from the responsibilities of the state as represented by the county attorney that applying collateral estoppel would "interfere with the proper allocation of authority between" the commissioner and the state. Restatement (Second) of Judgments § 36, cmt. f; see Cook v. State, 921 So.2d 631, 643–44 (Fla.Dist.Ct.App.2005) (concluding that the different responsibilities of the Florida Department of Education, Education Practices Commission, whose purpose is to discipline educators, and the state, as represented by the state attorneys for the purpose of prosecuting crimes, supported a finding that the parties were not in privity).

Moreover, the different functions of an implied consent proceeding and a DWI prosecution underscore the state's inability to establish controlling participation in the implied consent proceeding. In this case, the Commissioner of Public Safety and the state both have an interest in establishing that Lemmer was intoxicated. But this common interest is insufficient to establish controlling participation. See Pirrotta, 396 N.W.2d at 22 (holding that even though the school board's interests were similar to those of the appellant teacher where the school board acted on its own behalf without accountability to the teacher, there was no privity and collateral estoppel does not apply). The state has no authority over decisions made by the commissioner in implied consent proceedings and vice versa. See State, Dep't of Pub. Safety v. Mulvihill, 303 Minn. 361, 368, 227 N.W.2d 813, 818 (1975) (noting that license revocation is imposed by the commissioner "regardless of the outcome of the criminal proceeding"); House, 291 Minn. at 425–26, 192 N.W.2d at 95 (concluding that the county attorney has no authority to litigate implied consent proceedings without receiving permission from the attorney general). Because the state had no input into litigation strategy, the state cannot be said to have exercised controlling participation in the litigation. See Miller, 459 S.E.2d at 125 (concluding that privity did not exist between the prosecuting attorney and government agency because the prosecuting attorney's interest in having guilt or innocence determined is not met in an administrative proceeding where the prosecuting attorney has "no control over the timing, substance, or litigation of charges"); Fritz, 527 A.2d at 1166–67 (concluding that the department of consumer protection, which had the authority to investigate licensing complaints

and could bring administrative proceedings to deal with license violations, and the division of criminal justice, which governed the state's attorneys who investigated and prosecuted criminal matters, were not in privity because "the state's interest in having guilt or innocence determined is not adequately served in an administrative proceeding because * * * the state's attorney has no control over the timing, substance or litigation of charges lodged against the defendant by the department of consumer protection").[7] The lack of controlling participation by the state, combined with the state's lack of interest in the outcome of the hearing and the state's inability to appeal an adverse ruling against the commissioner in an implied consent proceeding, supports our conclusion that the differing functions and responsibilities of the Commissioner of Public Safety and the State of Minnesota weigh against the existence of privity. We conclude that privity does not exist between the Commissioner of Public Safety and the state in these circumstances.

### D. Full and Fair Opportunity to Be Heard

In this case, Lemmer's trial counsel informed the Scott County Attorney in writing of Lemmer's implied consent hearing. The state, apparently relying on Minn. Stat. § 169A.53, subd. 3(g), did not attend the implied consent hearing.

Because the state was relying in good faith on section 169A.53, subd. 3(g), it had no incentive to participate in the implied consent proceeding. Moreover, given the statutory limitations on the state's role in implied consent proceedings, it is unclear

to us the extent to which the state would have been allowed to participate. Therefore, we conclude that the state did not have a full and fair opportunity to be heard on the litigated issue. See In re Miller, 153 B.R. 269, 274 (Bankr.D.Minn. 1993) (concluding that a full and fair opportunity to be heard existed where the party had an opportunity and incentive to litigate the issue and failed to do so); Reynolds v. State, 4 S.W.3d 13, 16–18 (Tex. Crim.App.1999) (concluding that the Department of Public Safety and the county district attorney were not the same party for collateral estoppel purposes, particularly where the district attorney had no opportunity to litigate the issue decided in the administrative proceeding).

In sum, we conclude that collateral estoppel is inapplicable to issues litigated in DWI prosecutions that were previously litigated in implied consent proceedings because the Commissioner of Public Safety and the state are not in privity, and in this instance the state did not have a full and fair opportunity to be heard.

### V.

 We will only exercise our power to declare a statute unconstitutional when absolutely necessary and only with extreme caution. In re Haggerty, 448 N.W.2d at 364. When a statute encroaches upon a judicial function, this court may permit the statute to stand as a matter of comity so long as the statute does not conflict with the court's inherent authority to make the final decision. State v. Jim Lupient Oldsmobile Co., 509 N.W.2d 361, 363 (Minn.1993); see also Sharood v. Hatfield, 296 Minn. 416, 422–25, 210 N.W.2d

---

**7.** The dissent disagrees with our reliance on Miller and Fritz, focusing on the fact that the cases involve the preclusive effect of administrative decisions and not judgments of the court. The fact that Miller and Fritz involve

administrative decisions is not determinative. Rather, we believe that Miller and Fritz are important because they illustrate the differences in the authority of the two state agencies.

275, 279–80 (1973). In this case, because we conclude that the elements of collateral estoppel have not been satisfied and that public policy weighs against the application of collateral estoppel, we believe that Minn.Stat. § 169A.53, subd. 3(g), should be allowed to stand as a matter of comity.

Affirmed.

Dissenting, HANSON, PAGE, and ANDERSON, PAUL H., JJ.

HANSON, Justice (dissenting).

Although I agree with the conclusion that, under separation of powers, only the court has the power to modify the common law doctrine of collateral estoppel, I disagree with the further holdings of the majority. I would conclude that for collateral estoppel purposes the state and the Commissioner of Public Safety are the same party or, at the very least, are in privity with one another—the commissioner acts in his official, not individual, capacity and is nothing more than an officer and agent of the state. And I would conclude that comity should not be given to legislative efforts to overrule this application of the common law doctrine of collateral estoppel because the public policy considerations underlying that doctrine substantially outweigh the inconvenience to the state of simply being required to coordinate the implied consent civil proceedings and driving while impaired (DWI) criminal prosecutions.

## A. Separation of Powers

I agree with the conclusion of the majority that the common law doctrine of collateral estoppel is properly classified as procedural, not substantive, for separation of powers purposes. But I think it is important to look beneath that somewhat technical classification and consider the fundamental importance of the doctrine of collateral estoppel to the ability of the judiciary to fulfill its constitutional mandate to fairly and efficiently adjudicate civil and criminal cases under the rule of law. The doctrine of collateral estoppel is fundamentally important to the judiciary for at least three separate but interrelated reasons: [1]

### 1. Fairness to the Parties

Once a judgment has become final, the parties to the proceeding have the right to rely on that judgment to govern their affairs. This principle of finality is crucial to allow the parties to conclude their disputes and move forward, to eliminate the waste of time and resources that would be re-

---

1. *See, e.g., Astoria Federal Savings & Loan Ass'n v. Solimino,* 501 U.S. 104, 107–08, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991):

Such repose is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise. To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution.

*See also Travelers Insurance Co. v. Thompson,* 281 Minn. 547, 555, 163 N.W.2d 289, 294 (1968):

An impressive number of courts have followed the same rule, largely prompted by a public policy to discourage the use of courts in proceedings which, as the Virginia and New York courts have said, "would discredit the administration of justice, defy public policy and shock the most unenlightened conscience" and permit a possible result which would "encourage and give support to current thoughtless and carping criticism of legal procedure, and to justify the gibe that the administration of the law is the only remaining legalized lottery."

(Citations omitted).

quired to engage in duplicate proceedings, and to avoid the risk of inconsistent decisions. The doctrine of collateral estoppel is one of the tools that the judiciary has fashioned to assure fairness to the parties by establishing and preserving the finality of judgments of the court.

### 2. Prudent Use of Judicial Resources

Annually, over 2,000,000 new cases are filed in Minnesota district courts, and over 220,000 of them require substantive attention by a judge. Studies by the legislative auditor have concluded that Minnesota district judges carry individual caseloads that greatly exceed those of judges in the other states in the upper-Midwest. In order to assure that each person who claims a right or seeks a remedy in the Minnesota courts will receive a fair and reasoned decision, it has been necessary for the judicial branch to better organize and streamline court processes. The doctrine of collateral estoppel was important to the judiciary in earlier times, when there was less pressure on the district courts, but it is even more important to the current efforts to fairly and efficiently adjudicate a growing caseload. That doctrine eliminates the waste of judicial time and court resources by providing finality—an issue need be determined only once and when that decision becomes final it prevents any party who may be dissatisfied with the outcome from requiring any judge to devote more time and court resources to decide it again.

### 3. Public Trust and Confidence

A legislative requirement that the judiciary provide duplicate trials for selected issues would devalue the worth of the judicial effort that was expended to decide the issue the first time and would present the possibility of inconsistent decisions by different judges on precisely the same issue. Surely the parties, and the public at large, would have little trust in a judiciary that allows the losing party a second chance to litigate an issue that has already been decided by a final judgment and imposes the risk on the winning party that the second decision might come out differently.

For these reasons, the doctrine of collateral estoppel is inherently judicial and is not within the province of the legislative branch.

### B. Parties and Privity

Collateral estoppel applies where, among other things, the party to be estopped in the present case by the judgment in the former case was a "party or in privity with a party to the prior adjudication." *Willems v. Comm'r of Pub. Safety*, 333 N.W.2d 619, 621 (Minn.1983) (quoting *Victory Highway Village, Inc. v. Weaver*, 480 F.Supp. 71, 74 (D.Minn.1979)). The majority concludes that this element was not satisfied here because the state, as a party to the present DWI prosecution, is not the same party as the commissioner, who was the named party to the prior implied consent proceeding. Further, the majority concludes that the two are not even in privity.

### 1. Identical Parties

Clearly, the commissioner does not act in his individual capacity in an implied consent proceeding, but only in his official capacity as a member of the executive branch of state government, and thus as an officer and agent for the state. The state, although a legal "person" for most purposes, can only act through its officers and agents. The only apparent reason that the implied consent statute specified that the commissioner must be named as the "respondent" in a petition for judicial review is that the commissioner provides the prior administrative review. *Compare*

Minn.Stat. § 169A.53, subd. 1 (2006)[2] ("[A] person may request in writing a review of the order of revocation or disqualification by the commissioner * * *."), *with* Minn.Stat. § 169A.53 subd. 2(b)(1) (2006) (noting the petition must "be captioned in the full name of the person making the petition as petitioner and the commissioner as respondent"). In this sense, the commissioner is the nominal party, and the state is the real party. In fact, the implied consent statute recognizes that the state is the real party in both the implied consent and the DWI proceedings by providing that the implied consent hearing "may be conducted at the same time and in the same manner as hearings upon pretrial motions in the criminal [DWI] prosecution." Minn.Stat. § 169A.53, subd. 3 (2006).

This identity between officers and the government they serve was recognized years ago by the United States Supreme Court in *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402–03, 60 S.Ct. 907, 84 L.Ed. 1263 (1940), where the Court stated:

> Where the issues in separate suits are the same, the fact that the parties are not precisely identical is not necessarily fatal. As stated in *Chicago, R.I. & P. Ry. Co. v. Schendel*, 270 U.S. 611, 620, 46 S.Ct. 420, 70 L.Ed. 757, "Identity of parties is not a mere matter of form, but of substance. Parties nominally the same may be, in legal effect, different, ... and parties nominally different may be, in legal effect, the same." A judgment is *res judicata* in a second action upon the same claim between the same parties or those in privity with them. *Cromwell v. County of Sac*, 94 U.S. 351,

24 L.Ed. 195. There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the government. The crucial point is whether or not in the earlier litigation the representative of the United States had authority to represent its interests in a final adjudication of the issue in controversy.

(Citations omitted.)

The reference to "the representative" in *Sunshine Anthracite Coal Co.* means the governmental agency, not its counsel. In other words, because two agencies are in privity with one another and are representatives of the same government, the only question is whether the agency that was the nominal party in the first proceeding had authority to represent the government in that proceeding. As applied here, the question is whether the commissioner had authority to represent the state in the implied consent proceeding. If the commissioner did, then the interests of the state were adequately represented in the implied consent proceeding and any judgment is binding on the state or any of its other agencies.

The Supreme Court of Alaska relied on *Sunshine Anthracite Coal Co.* to conclude that there was an identity of parties between the state and its department of public safety so that a suppression order entered against the state in a DWI preliminary hearing, determining that the results of a breathalyzer test could not be used because of the failure to preserve a sample, collaterally estopped the department from relitigating the admissibility of

---

**2.** After the date of the incident that gives rise to this case, Minn.Stat. § 169A.53, subd. 3, was amended. *See* Act of June 1, 2006, ch. 260, art. 2, § 12, 2006 Minn. Laws 707, 738–

**40.** Because the amendments are minor and do not affect the outcome of the case, all citations are to the current version of Minn. Stat. § 169A.53.

the test results in the license revocation proceeding. *Briggs v. State, Dep't of Pub. Safety*, 732 P.2d 1078, 1082–83 (Alaska 1987). The court in *Briggs* stated:

> The suppression issue decided by the district court was fully litigated by the prosecution at the suppression hearing. The interests of the Department of Public Safety in litigating this issue were thus adequately represented. We therefore conclude that all the requirements for collateral estoppel have been met, and the state is therefore barred from relitigating the suppression issue.

*Id.*

The Ohio Supreme Court was even more direct in finding identity between the state and its bureau of motor vehicles, stating:

> The state argues essentially that privity does not exist between the parties because it is the [Registrar of Motor Vehicles] whose interest is represented at the [administrative driver's license suspension] appeal and it is the state whose interest is represented at the criminal proceeding. We find this argument to be unpersuasive. The state acts through its various agencies and entities, and the Bureau of Motor Vehicles is an agency of the state. We conclude that the state of Ohio is the real party in interest in both proceedings and the requirement of privity as an element of issue preclusion is satisfied.

*State v. Williams*, 76 Ohio St.3d 290, 667 N.E.2d 932, 936 (1996).

The fact that one proceeding is civil in nature and the other is criminal in nature does not alter the identity of the state as a party to each. In *Travelers Insurance Co. v. Thompson*, we said:

> We agree with appellants that the judgment of conviction in the criminal case is conclusive as to the result of the civil action before us to determine respondent's rights to the proceeds of the in-surance policies on the life of his deceased wife. We are constrained to the view that to permit a retrial of the facts and issues [in a civil proceeding that were] already determined in the criminal proceeding would be an imposition on the courts and only tend to embarrass or bring into disrepute the judicial process.

281 Minn. 547, 555, 163 N.W.2d 289, 294 (1968).

Of course, the application of collateral estoppel between criminal and civil cases may run afoul of another element, the need that the issues be identical. *See Willems*, 333 N.W.2d at 621. A finding of fact against the driver in a civil case, to a fair preponderance of the evidence, would not be identical to the issue in the criminal case, where the same fact must be proven beyond a reasonable doubt. And conversely, the findings of fact inherent in a *not-guilty* verdict in a criminal case would not be the identical issue when the same facts are presented in a civil case, where they need only be proven by a fair preponderance of the evidence. But, as the majority agrees, those differences in burden of proof are not implicated here because the fact question decided in the implied consent hearing—that the deputy had no particularized basis to stop Lemmer—is precisely the same fact issue that is presented (and is to be determined under the same standard of proof) in the DWI proceeding.

The majority relies on *State, Dep't of Pub. Safety v. House* for the conclusion that the state and the commissioner are not identical parties. 291 Minn. 424, 192 N.W.2d 93 (1971). That reliance is misplaced because *House* focused not on the parties but on the attorneys—a fact that is wholly irrelevant for collateral estoppel purposes. Although *House* arose from an implied consent proceeding, and involved

the impact on that proceeding of actions taken in the DWI prosecution, it did not involve a prior judgment of the court in either proceeding and thus did not present any collateral estoppel issue. Instead, it only involved the scope of the authority of the attorney in the DWI proceeding to negotiate a plea that included the dismissal of the implied consent proceeding. Id. at 424–25, 192 N.W.2d at 94. We focused on the statutes that authorize the county attorneys to represent the state in DWI proceedings and the attorney general to represent the commissioner in implied consent proceedings, holding narrowly: "We accordingly hold that the county attorney acted beyond his authority in attempting to bargain for dismissal of these proceedings, the responsibility for which is vested in the commissioner of public safety." Id. at 426, 192 N.W.2d at 95.

The Alaska Supreme Court, when it applied collateral estoppel in a license revocation proceeding to the judgment of the court in a DWI proceeding, distinguished the circumstances of its case from those similar to those presented in *House:*

> The instant case is distinguishable from situations where the differing interests of the prosecutor and the administrative agency might justify a refusal to apply collateral estoppel. *For example, this is unlike a case in which the defendant is seeking estoppel effect from a prosecutor's dismissal of charges or stipulation of facts.* There the prosecutor's decision to dismiss or to stipulate might reflect interests not shared by the administrative agency and thus should not be used against the agency, which was not entitled to appear at the crimi-

nal proceeding. Likewise, this is not a case where the defendant attempts to use a criminal acquittal for estoppel effect at the administrative proceeding. There the differing burdens of proof would justify refusal to give collateral estoppel effect.

*Briggs,* 732 P.2d at 1083 n. 9 (emphasis added).

Because it was unnecessary in *House* to decide whether the parties were identical, any statements we made about the relationship between the parties was necessarily dicta. And, perhaps because that was not the focus of the case, our statements about the parties were actually contradictory. We did make the broad statement, relied on by the majority, that "the parties to the proceedings are not the same," but we later contradicted that statement when we equated the state with the commissioner, stating "[n]o authority is given for the county attorney to deal with civil cases [i.e., implied consent proceedings] *in which the state, rather than the county, is a party." House,* 291 Minn. at 425, 192 N.W.2d at 95 (emphasis added). Accordingly, *House* is of no guidance in this case.

Moreover, the question of whether the state and the commissioner are the same party should not depend on who their attorneys are.[3] The state, like any other party, is free to select its attorney. The state has selected its attorneys by enacting statutes that designate the attorney general's office to be the primary attorney in implied consent proceedings and the county attorney to be the primary attorney in DWI proceedings. *See* Minn.Stat. § 169A.53, subd. 3 ("The commissioner

---

**3.** Some of the cases from other jurisdictions cited by the majority are not persuasive on the issue of collateral estoppel because they focus not on the parties to the two proceedings, but on their attorneys. *See, e.g., State v. Fritz,* 204 Conn. 156, 527 A.2d 1157, 1166–67 (1987) *overruled on other grounds by State v. Crawford,* 257 Conn. 769, 778 A.2d 947 (2001); *Reynolds v. State,* 4 S.W.3d 13, 17 (Tex.Crim.App.1999); *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114, 124 (1995).

shall appear and be represented by the attorney general or through the prosecuting authority for the jurisdiction involved."); Minn.Stat. § 388.051, subd. 1(c) (2006) (stating the county attorney shall: "prosecute felonies, including the drawing of indictments found by the grand jury, and, to the extent prescribed by law, gross misdemeanors, misdemeanors, and petty misdemeanors."). But those assignments are not made exclusive. Thus, the county attorney may request that the attorney general represent the state in DWI proceedings. *See* Minn.Stat. § 8.01 (2006). And the county attorney may act either as alternative counsel in the implied consent proceeding, *see* Minn.Stat. § 169A.53, subd. 3 (permitting representation by the "prosecuting authority for the jurisdiction involved"), or may be designated, on the attorney general's request, to represent the commissioner in implied consent proceedings, *see* Minn.Stat. § 8.06 (2006) ("When requested by the attorney general, it shall be the duty of any county attorney of the state to appear within the county and act as attorney for any * * * officer in any court of such county.").[4]

In other words, the selection of counsel is an internal matter for the state and should not alter the rights of third persons with whom the state litigates. Nothing in the statutes prevents the county attorneys and the attorney general from communicating with one another and coordinating common issues that can be expected to arise in these two proceedings. And nothing in the statutes prevents them from agreeing about how they will allocate the issues between them. To the contrary, the statutes actually encourage such cooperation and provide the mechanism for the attorney general and the county attorneys to be interchangeable. These mechanisms assure that the state has a full and fair opportunity to be heard in both the implied consent and the DWI proceeding. It has chosen which counsel it will primarily use in each proceeding, and it has authorized primary counsel to coordinate and even switch roles where appropriate.

Because the commissioner is merely a nominal party in implied consent proceedings, and the real party is the state, whose interests the commissioner represents, I would conclude that the parties in an implied consent proceeding and those in the parallel DWI proceeding are identical for collateral estoppel purposes.

### 2. Privity

Although I conclude that the state and the commissioner are identical parties, and thus the question of "privity" need not be addressed, I note that many of the courts that have addressed the issue of collateral estoppel in the context of the dual proceedings for license revocation and DWI prosecution have loosely used the word "privity" to explain their holdings. And, it should be emphasized, a majority of the supreme courts from other jurisdictions that have addressed the precise issue before us have held that the state agency that deals with license revocation and the state that prosecutes DWI offenses are either the same party or are in privity. *See, e.g., State v. Summers,* 351 N.C. 620, 528 S.E.2d 17, 21 (2000) ("However, there can be no question that the district attorney and the Attorney General both represent the interests of the people of North Carolina, regardless of whether it be the district attorney in a criminal trial court or

---

4. Of course, a county is a subdivision of the state. Minn.Stat. § 2.01 (2006); *County of Freeborn v. Bryson,* 309 Minn. 178, 188, 243 N.W.2d 316, 321 (1976) (stating that as a political subdivision of the state, a county has the duty to see that legislative policy is carried out).

the Attorney General in a civil or criminal appeal."); *Thompson v. State Dep't of Licensing,* 138 Wash.2d 783, 982 P.2d 601, 607 (1999) (holding that the state and the Department of Licensing were the "same parties" even though they were represented by different counsel); *Briggs,* 732 P.2d at 1082 ("Under the circumstances presented here, we hold that the Department of Public Safety and the state were in privity."); *cf. Huelsman v. Kan. Dep't of Revenue,* 267 Kan. 456, 980 P.2d 1022, 1025 (1999) (holding that a city that prosecuted a DWI offense was not in privity with the state agency that was responsible for license revocation).

This majority rule in license revocation DWI proceedings represents an appropriate application of the general rule followed in the other contexts where different state agencies represent the state and are regarded as the same party or in privity. *See, e.g.,* 18A Charles Alan Wright, et al., *Federal Practice and Procedure* § 4458, at 560 (2d ed. 2002) ("The general rule is that litigation by one agency is binding on other agencies of the same government, but exceptions may be warranted if there are important differences in the authority of the respective agencies."). Again, the majority of jurisdictions have held that the state and a state agency are the same party or in privity in other contexts where there are parallel criminal or civil proceedings. *See, e.g., People v. Watt,* 115 Mich. App. 172, 320 N.W.2d 333, 336 (1982) (holding that the Oakland County Prosecutor and the Michigan Department of Social Services are both creatures of the same sovereign, so that the judgment in the administrative proceeding that the department failed to prove facts necessary to terminate benefits precluded proof of welfare fraud in the criminal proceeding); *State v. Williams,* 132 Wash.2d 248, 937 P.2d 1052, 1057 (1997) (holding that the Department of Social and Health Services, which had determined in a dependency proceeding that Williams had not intentionally received overpayments, was in privity with the county prosecutor of the welfare fraud crime because both "represent the State."); *State v. $11,346 in U.S. Currency,* 777 P.2d 65, 68 (Wyo.1989) (holding that there was "sufficient identity of interest between [the state in prosecuting a criminal drug offense and an agency of the state in pursuing a forfeiture proceeding] to warrant the application of collateral estoppel").

The cases cited in the majority opinion on the issue of privity are distinguishable for several reasons, partly because they did not arise in the license revocation/DWI context and partly because they involve the preclusive effect of administrative decisions, not of judgments of a court.

Thus, in *State v. Miller,* cited by the majority, the West Virginia Supreme Court of Appeals considered privity in the context of the impact of a state employee grievance proceeding on the criminal prosecution for the employee's assault of a patient at a state operated facility. 194 W.Va. 3, 459 S.E.2d 114 (1995). The employee argued that the decision of an administrative law judge, that the state failed to prove that the employee abused the patient, should preclude the criminal prosecution under the doctrine of collateral estoppel. *Id.* at 119–20. The issue framed by the court was "whether collateral estoppel operates to bar relitigation in a state criminal proceeding of issues previously decided by a *state administrative agency.*" *Id.* at 121 (emphasis added). The court did discuss privity, but only as an alternative ground to its holding, and based its privity decision on the inappropriate comparison of the role of the Department of Health and Human Services with the role of the prosecuting attorney in the criminal proceeding. *Id.* at 124–25. But the real

basis for the decision was the recognized exception to collateral estoppel where there are " 'differences in the quality or extensiveness of the procedures followed in two courts.'" *Id.* at 121 (quoting Restatement (Second) of Judgments § 28(3) (1980)). The court concluded that the issues and procedures were not identical between the two proceedings, even though there were overlapping factual settings, because the procedures governing decisions of the grievance board were streamlined to provide a simple, expeditious process and were "much different than that employed at a criminal trial." *Id.* at 123. The court concluded that the issues of whether an employee was terminated wrongfully for patient abuse was not the same issue as whether the employee committed a criminal act of battery. *Id.*

Similarly, in *State v. Fritz,* the Connecticut Supreme Court considered privity in the context of the impact of a decision by an administrative hearing officer, determining that a doctor's medical license should not be terminated because the state did not prove that he made illegal prescriptions, on a criminal prosecution for making illegal prescriptions. 204 Conn. 156, 527 A.2d 1157 (1987), *overruled on other grounds by State v. Crawford,* 257 Conn. 769, 778 A.2d 947 (2001). The court concluded that the "department of consumer protection [that commenced the licensing proceeding] is not in privity with the division of criminal justice," represented by the state's attorneys. *Id.* at 1166, 778 A.2d 947. The court observed that the "state's interest in having guilt or innocence determined is not adequately served in an administrative proceeding." *Id.* at 1167, 778 A.2d 947.

The circumstances of those cases are not comparable to the circumstances presented here because the probable cause determination in Lemmer's implied consent proceeding was made de novo by a judge, not an administrative officer; the issue to be precluded is a narrow one, the admissibility of certain evidence and not the ultimate issue of guilt or innocence; and the standards and procedures under which that issue was determined in the implied consent proceeding are the same as those that would be applicable in the criminal proceeding—both require the state to prove by a fair preponderance of the evidence that the officer had a particularized and objective basis for stopping Lemmer's boat, *see State v. Needham,* 488 N.W.2d 294, 297 (Minn.1992) (confirming that state's burden of proof at a motion to suppress evidence in a criminal proceeding is by a fair preponderance); *State, Dep't of Highways v. Halvorson,* 288 Minn. 424, 431, 181 N.W.2d 473, 477 (Minn.1970) (holding that the state's burden of proof in a license revocation proceeding was by a fair preponderance of the evidence).

Accordingly, even if I were to analyze this case under the concept of privity, I would follow the overwhelming weight of authority that concludes, in circumstances comparable to those presented here, that the state is in privity with a state agency that represents the state in license revocation proceedings.

*C. Full and Fair Opportunity to be Heard*

The majority independently reviews the question of whether the estopped person had a full and fair opportunity to be heard. But the majority focuses that question on the wrong proceeding. The majority asks whether the state, as a party to the DWI proceeding and represented by the county attorney, had the opportunity to participate in the implied consent proceeding. Of course, if the state and the commissioner are the same party, as discussed above, the state's opportunity to participate in the

implied consent proceeding would be measured by the scope of the commissioner's opportunity, which appears to have been full and complete. The same result would follow if the state and the commissioner are in privity because the commissioner will be deemed to have fully represented the interests of the state in the implied consent proceeding.

Thus, the only meaningful analysis of the opportunity to be heard is one that focuses on the scope of the commissioner's opportunity. This factor would preclude the application of collateral estoppel only where the quality and extensiveness of the prior proceeding is so deficient that it did not provide a true opportunity to be heard. Suffice it to say that in Minnesota, the standards and procedures applicable to implied consent cases are of the same quality and extensiveness as those available in a motion to suppress evidence obtained during the stop in a DWI proceeding.

### D. Public Policy; Comity

Perhaps the most difficult issue is whether we should refrain from the application of collateral estoppel, for reasons of public policy or out of comity to the legislature. The state argues that the application of collateral estoppel here would be contrary to sound public policy.

Although the ultimate purposes of each proceeding may differ, the question is whether they are so different that the parties are not likely to take the implied consent proceeding as seriously as the DWI proceeding. On that issue, I agree with the observation by the court of appeals in *State v. Victorsen* that any differences have blurred considerably over time. 627 N.W.2d 655, 661–62 (Minn.App.2001), *superseded by statute,* Minn.Stat. § 169A.53, subd. 3(g). The court of appeals stated:

Penalty enhancements are now available to criminal prosecutors by virtue of license revocations pursuant to the implied consent statute. *See, e.g.,* Minn. Stat. §§ 169A.25, 169A.26 (elevating severity of DWI offenses to a gross misdemeanor if the offender had a prior license revocation within the past ten years), 169A.275 (increasing the mandatory penalties for each prior license revocation within a ten-year period), 169A.28 (providing for mandatory consecutive sentences if the person has prior license revocations), 169A.31 (2000) (elevating severity of alcohol-related bus driving offenses to a gross misdemeanor if the offender had a prior license revocation within the past ten years). Therefore, when defending a license revocation, the actions of the Commissioner of Public Safety now affect the potential criminal penalties available to the state. Similarly, prior impaired driving convictions serve the commissioner's interests by lengthening the duration of administrative license revocations. *See, e.g.,* Minn.Stat. §§ 169A.52, subd. 4, 169A.54, subd. 1 (2000) (increasing duration of administrative license revocations with prior license revocation). The relationship between these parties is symbiotic, and the differences in their interests, as articulated in [*State v. Juarez,* 345 N.W.2d 801 (Minn.App.1984)] have become a fictional construct.

Moreover, the effect of Juarez has been the institutionalization of a process whereby duplicative proceedings are frequent with inconsistent outcomes a distinct possibility. Drivers may challenge the legality of traffic stops at both implied consent hearings and at pretrial hearings in criminal matters. These parallel proceedings involve the same substantive law, elements of proof, standard of proof, burden of proof, and, often, the same evidence as well. This

unnecessary duplication of hearings is contrary to the rules of criminal procedure, which are intended to provide for the "just, speedy determination of criminal proceedings." Minn. R.Crim. P. 1.02. Furthermore, does not justice presume the consistent application of the law? The potential for inconsistency, realized in this case, is among the most objectionable results of the present system. Multiple hearings on the same record and for the determination of the same question unnecessarily burden the parties and provide no justifiable benefit.

*Id.* (footnote omitted).

Since *Victorsen,* the implied consent and DWI provisions have become even more integrated. Because the loss of license is a "qualified prior impaired driving incident," Minn.Stat. § 169A.03, subd. 22 (2006), an implied consent proceeding may provide the basis to increase a future driving while impaired offense to first-degree, which is a felony, *see* Minn.Stat. § 169A.24, subds. 1 and 2 (2006).[5] The loss of license may also elevate the penalty for lesser degrees of driving while impaired offenses, *see* Minn.Stat. §§ 169A.25–169A.27 (2006); increase mandatory penalty provisions, *see* Minn. Stat. §§ 169A.275–169A.276 (2006);[6] and trigger mandatory consecutive sentencing provisions, *see* Minn.Stat. § 169A.28 (2006).[7] Because the stakes have been increased significantly for both a license revocation and a DWI conviction, there is no reasonable likelihood that the state or the driver will treat an implied consent proceeding less seriously than a DWI prosecution.

When we compare the implied consent hearing with a suppression hearing in the DWI proceeding, the differences become even less. The legal standard is the same; the underlying fact issues are the same; the burden of proof is the same; each will be heard de novo by a district judge; and the statute authorizes the two to be heard by the same judge at the same time, Minn. Stat. § 169A.53, subd. 3. Because the suppression hearing would be focused, as in this case, on the legality of the stop, the issues are relatively simple. Thus, it is difficult to see how the state would be prejudiced by being required to conduct them together, or to coordinate their roles.

One treatise has suggested this very solution:

It had long been the rule that an order suppressing evidence in an implied consent case did not collaterally estop the prosecutor from relitigating the issue in a later impaired driving criminal prosecution. But this rule has been modified so that the earlier ruling will be collateral estoppel if the prosecutor had notice of and an opportunity to participate in the initial suppression hearing. The previous rule made for an unfortunate duplication of effort in certain cases, where the identical issues are presented in both proceedings. It also cre-

---

5. Minn.Stat. § 169A.24, subd. 1, was amended in 2006. *See* Act of June 1, 2006, ch. 260, art. 2, § 3, 2006 Minn. Laws 707, 734.

6. Minn.Stat. § 169A.275, subd. 1, was amended in 2005, effective after the date of the events that give rise to this case. *See* Act of June 2, 2005, ch. 136, art. 18, § 2, 2005 Minn. Laws 901; 1156–57. Minn.Stat. § 169A.275, was also amended in 2007. *See* Act of May 7, 2007, ch. 54, art. 3, § 1, 2007

Minn. Laws ——, ——. Because the changes do not alter our reasoning, the 2006 version is cited for simplicity.

7. Minn.Stat. § 169A.28, subd. 1, was amended subsequent to the events that give rise to this case. *See* Act of June 1, 2006, ch. 260, art. 2, § 4, 2006 Minn. Laws 707, 734–35. Because the changes do not alter our reasoning, the current version of the statute is cited

ates the possibility of directly conflicting orders by two judges in the same court. Except where constitutional considerations may dictate different approaches, it would obviously be more efficient to require only one hearing and decision on these questions. The courts, having authority to regulate procedural matters, could establish such a procedure. The collateral estoppel doctrine may be avoided by having both state agencies participate in the hearing, or waive their appearances.

9A Henry W. McCarr & Jack S. Nordby, Minnesota Practice—Criminal Law and Procedure § 56.33 (3d ed.2001) (footnotes omitted).

It is true that section 169A.53, subd. 3(b), limits the scope of an implied consent hearing. The limitation of that statute might prevent collateral estoppel if the issue that was to be determined in the DWI proceeding was not one that was within the scope of review in the implied consent hearing, but that is not the case here. The issue is identical. The scope of the hearing permitted in the implied consent proceeding specifically includes "Did the peace officer have probable cause to believe the person was driving, operating, or in physical contact of a motor vehicle * * * in violation of section 169A.20 (driving while impaired)?" Minn.Stat. § 169A.53, subd. 3(b)(1). This is the precise issue presented by the motion to suppress in the DWI proceeding. Thus, although the narrower scope of hearing in implied consent proceedings might mean that the issues determined there will not always be identical to the issues presented in the DWI proceeding, the issue is identical here.

Similarly, any argument that the implied consent proceeding does not offer the procedural safeguards available *to the driver* in a DWI proceeding is irrelevant where the driver prevailed on the issue with fewer procedural safeguards in the implied consent proceeding. The state can hardly complain that Lemmer should have to try the legality of the stop over again because Lemmer could have even greater procedural protections in the second trial. This argument would only have merit if the party to be estopped (here, the state) had fewer procedural safeguards in the implied consent proceeding.

Because the public policy considerations that underlie the collateral estoppel doctrine are fundamental to the judicial function, and the detriment to the state of being faced with collateral estoppel is only a matter of inconvenience, not of fundamental right, I would not defer to the legislature as a matter of comity. I would hold that Minn.Stat. § 169A.53, subd. 3(g), is unconstitutional and that the judgment in the implied consent proceeding operates as collateral estoppel in the DWI proceeding to establish that the stop of Lemmer was unlawful and that the evidence obtained by that stop must be suppressed.

PAGE, Justice (dissenting).

I join in the dissent of Justice Hanson.

ANDERSON, PAUL H., J. (dissenting).

I join in the dissent of Justice Hanson.